A08A0212. FINDLEY v. GRIFFIN et al.
(666 SE2d 79)

PHIPPS, Judge.

Tommy Findley sued Joe Griffin, individually and d/b/a Five Points Grocery, alleging that Griffin's negligence had caused him to lose sight in one eye. The trial court granted Griffin's summary judgment motion on the grounds that Findley had failed to show any negligent conduct on Griffin's part and that Griffin had established the affirmative defense of the assumption of the risk. Because Findley has shown that summary judgment to Griffin was error, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences

---

drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, Findley's deposition testimony reveals the following. On October 14, 2003, Findley agreed to help Griffin affix to the grocery store ceiling a board, from which Griffin planned to hang a pegboard for various signs and merchandise. Holding opposite ends of the board, the two men stood on separate ladders placed about six feet apart. Findley nailed his end of the board to the ceiling and passed the hammer and nails to Griffin. Griffin successfully drove one nail through his end of the board and then "tapped" a second nail into the board to get that nail started. Findley testified that when Griffin attempted to drive the second nail through his end of the board, "he hit it, [and] it ricocheted and come across and put my eye out."

1. Findley contends that the trial court erred in finding as a matter of law that Griffin had not acted negligently in hammering the nails to the board.

To show that Griffin had breached a duty of care, Findley adduced the affidavit of a carpenter with 42 years of experience in the carpentry and construction business. The carpenter averred that affixing a board to a ceiling required extra care because of the angles involved; that before striking a nail with a lot of force, the nail should be adequately seated to ensure that it will not "kick back"; that once the nail is so seated, care must be taken to ensure that the hammer strikes the nail head "flat and direct" to exert the force upon the nail head in the direction of the nail body; that if the nail is not so struck, then the pressure on the nail is at an angle and to the side, and if the nail is not properly seated, the nail could fly sideways. According to the carpenter, the nail at issue in this case was apparently not adequately seated before receiving a forceful strike of the hammer and/or the forceful strike with the hammer was not at a "flat and direct" angle upon the nail head and nail body.

Construing the carpenter's and Findley's testimony, and all reasonable inferences therefrom, in Findley's favor, we conclude that the trial court erred in determining that no question of material fact remained as to whether Griffin had acted negligently in attempting to nail the board to the ceiling.[2] And while the trial court noted in its order Findley's reference to the incident as a "freak accident," such

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997) (citations omitted); see OCGA § 9-11-56 (c).

[2] See generally *Webb v. Carroll County*, 229 Ga. App. 584, 585 (2) (494 SE2d 196) (1997).

remark was insufficient to resolve this negligence issue as a matter of law.[3]

2. Findley contends that the trial court erred in determining that the affirmative defense of the assumption of the risk barred recovery.

"[A] defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[4]

> Knowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities.[5]

"In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone."[6] "As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed evidence."[7]

In ruling that the evidence established as a matter of law the defense of assumption of the risk, the trial court noted Findley's background. Findley had deposed that, while doing electrical work, he had hammered nails that "come by [his] head a few times."

In addition, the trial court cited *Stallings v. Cuttino*.[8] There, two 14-year-olds, Scott and Ben, decided to construct a skateboard ramp in Scott's backyard from old wood and used nails. The boys took

---

[3] See generally id. (finding jury question whether employer and supervisors had breached duty of care to plaintiff injured when piece of work equipment broke off and struck plaintiff's eye, where defendants had failed to provide plaintiff with safety goggles and failed to warn him of the dangers of working without them; determining that evidence that supervisor had never seen anyone wearing safety goggles while working with such equipment was not sufficient to remove issue from jury).

[4] *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996) (footnote omitted).

[5] Id. (punctuation and footnotes omitted; emphasis in original).

[6] *Muldovan v. McEachern*, 271 Ga. 805, 808 (2) (523 SE2d 566) (1999) (citation and emphasis omitted).

[7] *Turner v. Sumter Self Storage Co.*, 215 Ga. App. 92, 94 (3) (449 SE2d 618) (1994).

[8] 205 Ga. App. 581 (422 SE2d 921) (1992).

turns holding the pieces of wood together while the other hammered nails into the boards. One of the nails that Scott hammered flew up and struck Ben in the eye. We affirmed the grant of summary judgment, which determined that the negligence action filed to recover for Ben's eye injury was barred by the assumption of the risk defense. In so affirming, we noted Ben's testimony that he had known that using old wood and used nails was dangerous; that while he and Scott were nailing boards together, the nails sometimes would "fly away" or "fly up" instead of going through the wood; that Scott was not tapping the nails as far into the wood as he was before striking the nails with harder blows; that he did not say anything to Scott about the method he was using to hammer the nails into the wood; that while he was holding the wood and Scott was hammering, he (Ben) ducked his head and closed his eyes because of the problem with the flying nails; that when Scott paused his hammering, he thought that Scott had finished with that nail and thus raised his head; but that Scott again struck the nail, and it flew up and struck his eye.[9]

Notwithstanding Findley's background and *Stallings'* holding, the evidentiary record in this case does not establish as a matter of law the defense of the assumption of the risk. "[T]he standard to be applied in assessing an assumption of the risk defense is a subjective one, geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence who appears in the completely separate defense of contributory negligence."[10] Accordingly, "[i]n assessing whether [Findley] had the requisite knowledge of the danger and appreciation of the risks, we apply a subjective standard and look to what he knew, understood and appreciated."[11]

Although Findley admitted that he had occasionally hammered nails that came by his head, there is nothing in the record to show that any such experience involved a nail that had flown a distance of approximately six feet. And Findley's general awareness that hammering could result in a nail going in some unintended direction did not mandate a conclusion that, in this case, he had relieved Griffin of an obligation to exercise due care toward him and that he had opted to take his chances of injury from a known risk.[12]

[I]t is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to

---

[9] Id. at 581-582.

[10] *Muldovan,* supra (citation and punctuation omitted).

[11] *Champion v. Pilgrim's Pride Corp. &c.,* 286 Ga. App. 334, 337 (a) (649 SE2d 329) (2007) (citation and punctuation omitted).

[12] See generally *Wade v. Mitchell,* 206 Ga. App. 265, 270 (4) (b) (424 SE2d 810) (1992).

any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall.[13]

Moreover, the circumstances underlying *Stallings* are distinguishable from those underlying this case. Unlike the close proximity between the boys in *Stallings*, Findley was approximately six feet away from the hammering when the nail flew into his eye. And unlike the knowledge of the injured party in *Stallings*, there is no evidence that Findley knew that the materials being used were somehow unfit for the task; there is no evidence that Findley was aware of any prior nail flying up or away, instead of penetrating the board; and there is no evidence that Findley had discerned a problem with Griffin's manner of hammering. Rather, the evidence is undisputed that, prior to the single flying nail that injured him, Findley had successfully nailed his side of the board to the ceiling; Griffin had driven without incident one nail through his side of the board; and Griffin seemingly had adequately tapped into place a second nail. Viewing the evidence and all reasonable inferences therefrom most favorably to Findley, we conclude that the question whether Findley assumed the risk of his injury is one for a jury.[14]

*Judgment reversed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED JULY 3, 2008 —
RECONSIDERATION DENIED JULY 18, 2008 ▮▮▮▮▮

*John R. Thompson*, for appellant.
*Martin Kent, A. Martin Kent*, for appellees.

---

[13] *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 113 (1) (460 SE2d 800) (1995).

[14] See *Champion*, supra at 336-337; see further *Little Rapids Corp.*, supra (describing "classic" cases of assumption of the risk "such as trying to beat a rapidly approaching train across the crossing or participating in a drag race"); compare *Stallings*, supra.