A11A1022. YAMAHA MOTOR CORPORATION, U.S.A. et al.
v. McTAGGART et al.
(720 SE2d 217)

DOYLE, Judge.

Roger and Glenda McTaggart filed a personal injury action against Yamaha Motor Corporation, U.S.A., Yamaha Motor Manufacturing Corporation of America, and Yamaha Motor Company, Ltd. (collectively, "Yamaha"), after Roger sustained injuries when his Yamaha Rhino[1] rolled over onto his leg.[2] The McTaggarts' sole claim at trial was that the Rhino was defective because it lacked a door. At the conclusion of the trial, the jury returned a verdict in favor of the McTaggarts in the amount of $317,002. Yamaha appeals the trial court's denial of its subsequent motion for new trial, arguing that the trial court erred (1) by denying its motions for directed verdict and judgment notwithstanding the verdict; (2) in its instructions to the jury; and (3) by denying its request to include Yamaha's

---

[1] A Rhino is a four-wheeled, open-air, off-road vehicle.
[2] Glenda's claim was for loss of consortium.

affirmative defenses on the special verdict form. Because the evidence demands a finding that Roger assumed the risk of his injuries, we reverse and remand the case.

> On appeal from a trial court's rulings on motions for directed verdict and judgment notwithstanding the verdict, we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[3]

Viewed in this light, the record shows that the McTaggarts purchased their 2006 Yamaha Rhino 660 in October 2006. The vehicle is a two-seater without doors or windows. It has a steel roof cage, a textured, slip-resistant floor board, foot guards on both sides to help keep feet and legs inside the vehicle, hip guards, handholds, bucket seats, and three-point seatbelts. The vehicle also contains a warning sticker inside the vehicle, which sticker warns users that they could be severely injured or die if they attempt to stop a rollover using an arm or a leg, and it instructs the occupants to keep their arms and legs inside the vehicle.

When Roger purchased his Rhino, the dealership offered to install a flexible, plastic, aftermarket weather enclosure for the vehicle, but Roger explicitly declined because he preferred open access to allow for easy ingress and egress. In July 2007, following Roger's injuries, Yamaha added sculpted doors on new Rhinos and offered to install them on pre-owned vehicles after learning of lower extremity injuries that occurred when drivers extended their legs outside the vehicle during rollovers.

Roger traversed a variety of terrains in the Rhino at his property in Blue Ridge, Georgia, and he used the vehicle to haul dirt and livestock feed, build a fence, and carry equipment for his job as a grave digger. On May 14, 2007, Roger entered his Rhino, turned off the emergency brake, and put the vehicle into gear. According to Roger, he applied slight pressure to the gas pedal while making a "slight right turn," and the vehicle flipped over onto the driver's side after traveling less than six feet, landing on Roger's left leg and causing a severe laceration.

The McTaggarts filed suit in November 2008, asserting claims for negligence and strict liability. The complaint alleged that Roger's

---

[3] (Punctuation omitted.) *ASC Constr. Equip. USA v. City Commercial Real Estate*, 303 Ga. App. 309 (693 SE2d 559) (2010).

injuries were caused by a latent stability defect and the absence of doors. Four weeks before trial, the McTaggarts abandoned their stability defect claims, electing to proceed solely on their claim that the Rhino's occupant compartment was defective because it did not have a door.[4]

The jury returned a verdict in favor of the McTaggarts as follows: $140,000 for pain and suffering; $13,690 for medical expenses; $38,312 for lost wages; $100,000 for future lost wages; and $25,000 for Glenda's loss of consortium.[5] Yamaha subsequently filed a motion for new trial, which the trial court denied, and this appeal followed.

1. Yamaha argues that the trial court erred by denying its motions for a directed verdict and judgment notwithstanding the verdict because the undisputed evidence at trial demanded a finding that Roger assumed the risk of his injuries. We agree.

"Assumption of risk means the plaintiff is fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless."[6] Therefore, a plaintiff's recovery for an injury caused by a defective product is precluded under the affirmative defense of assumption of the risk if the defendant proves that the plaintiff "without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[7] "In asserting a defense of assumption of the risk, a defendant must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[8]

> Knowledge of the risk is the watchword of assumption of risk, and means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of

---

[4] The trial court granted the McTaggarts' motion in limine to exclude any evidence suggesting that Roger's manner of driving caused the accident or contributed to his injuries.

[5] The jury declined to award punitive damages.

[6] (Punctuation omitted.) *Cotton v. Bowen*, 241 Ga. App. 543, 544 (524 SE2d 737) (1999).

[7] (Punctuation and footnote omitted.) *Muldovan v. McEachern*, 271 Ga. 805, 807 (2) (523 SE2d 566) (1999).

[8] (Punctuation and footnote omitted.) *Garner v. Rite Aid of Ga.*, 265 Ga. App. 737, 739-740 (595 SE2d 582) (2004).

general, non-specific risks that might be associated with such conditions or activities.[9]

Finally, "[a]lthough assumption of the risk is ordinarily a jury question, in plain, palpable, and indisputable cases resolution of the issue by a jury is not required."[10]

Here, the jury found that the Rhino's defective design proximately caused Roger's injuries, and Yamaha does not appeal this portion of the verdict.[11] Regardless, if Yamaha established that Roger assumed the risks associated with operating the doorless vehicle, then Roger cannot recover. Construed in favor of the verdict, we conclude that Yamaha demonstrated that Roger had actual and subjective knowledge of the specific danger associated with the doorless design of the Rhino, that he fully appreciated the risks associated therewith, and that he voluntarily exposed himself to those risks.

Roger initially planned to purchase an all-terrain vehicle ("ATV"), but changed his mind at the dealership when he saw the doorless Rhino because "given [his] size, it would be easy to get in and out of," and "[i]t would let [him] get in and out of the vehicle easily so that [he] wouldn't have to step over the seat like [he] would in an ATV." Roger agreed at trial that the Rhino was useful to him specifically "because it had no door."

Roger also testified that he understood the warnings and instructions posted on the vehicle, which directed occupants to keep their limbs inside the vehicle at all times, and that he read the operator's manual:

Q: . . . Let's talk about the operator's manual. You read that manual when you got the vehicle, correct?

A: Correct. . . .

Q: So you got the chance to read the manual, including the safety warnings about not using too much speed or too much steering, correct?

A: Correct.

Q: You knew that was to avoid a tip-over, didn't you?

---

[9] (Punctuation omitted; emphasis in original.) *Hillman v. Carlton Co.*, 240 Ga. App. 432, 434 (1) (522 SE2d 681) (1999).

[10] (Citation omitted.) *Young v. Brandt*, 225 Ga. App. 889, 891 (3) (485 SE2d 519) (1997). See also *Sharpnack v. Hoffinger Indus.*, 223 Ga. App. 833, 835 (1) (479 SE2d 435) (1996) (holding that the risk-utility analysis adopted in *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994) did not bar summary judgment based on assumption of the risk).

[11] The jury also found in favor of the plaintiffs on their "negligence claims," but did not find that Yamaha's failure to adequately warn proximately caused Roger's injuries.

A: Yes.

Q: *And you saw the warnings about not sticking out your arms or legs in the event of a rollover that was, in other words, to let the occupant protection system of the vehicle do its job, correct?*

A: *Correct.*

Q: And you agreed with all those warnings in the manual, fair to say?

A: Yes.

Q: Fair to say that you knew that you could [injure] yourself if you did not follow those warnings, correct?

A: Correct.

Q: Fair to say it was important to you to operate the Rhino in a way consistent, that is, following the directions and safety warnings and manual, correct?

A: Correct.

Q: *Because you knew those were important to follow to protect yourself against the risks of operating the Rhino that you were fully aware of; isn't that right?*

A: *Correct.*[12]

According to Roger, when the salesman reviewed the warning stickers on the Rhino regarding keeping limbs inside the vehicle and avoiding sharp or fast turns to prevent a rollover, Roger "laughed . . . and said, 'Well, man, common sense would tell you not to do that, right?'" Roger conceded that because the Rhino lacked doors, if the vehicle rolled over, "you're going to grab onto something" and *"would brace with your feet up on the floorboard . . . if [you] had time. . . ."*[13]

At the time of this incident, Roger had been operating his Rhino for approximately seven months. Roger agreed that he had "some significant experience . . . riding off-road vehicles before [he] got the Rhino," including motorcycles, a Yamaha ATV, a Yamaha four-wheeler, three backhoes, and multiple tractors, testifying as follows:

Q: And from operating that backhoe, you know to stay with the vehicle if it tips over because your life depends on that. Never mind an injury, correct?

A: Correct. . . .

Q: *And you know that if you're buckled in, you do not jump,*

---

[12] (Emphasis supplied.)
[13] (Emphasis supplied.)

*you do not stick your hands out or your feet out; isn't that right?*

A: If you're buckled in, you're not going to be able to jump off, no. *But as far as sticking hands and stuff out, I mean, probably not intentionally you're not going to do it.*

Q: Well, you know from your experience with that backhoe that because it's got a roll bar and a seat belt, if it rolls over, you stay within the vehicle and you do not stick out your hands or feet; isn't that right?

A: Yes.

Q: Because you know what will happen to those legs or feet if you stick them out when it rolls? They get crushed, correct?

A: Yes.

Q: In fact, *fair to say that it's second nature to you that if the tip-over occurs, the best practice is to stay with the vehicle and stay within the occupant protection system of the vehicle, correct?*

A: *Correct. Stay in it to the best of your ability, yes.*

Q: By bracing yourself, holding on and bracing; isn't that right?

A: Yes.

Q: And that's just as true with the Rhino, isn't it?

A: I assume so, yes.

Q: So let's be clear. All that experience with the backhoe may not tell you exactly how the Rhino handles, but it certainly tells you what to do in the event of a tip-over; isn't that right?

A: Yes. There are warning labels on it, yes.[14]

Thus, the evidence established that Roger, who had significant experience operating the Rhino and other open-air vehicles, was clearly aware of the potential danger of injury to his limbs during a rollover in the doorless Rhino. Nevertheless, he deliberately chose to operate the vehicle despite the risk of injury because the Rhino afforded him easy ingress and egress.

On appeal, the McTaggarts argue that Roger, unlike Yamaha, did not know or appreciate that he might involuntarily put his foot out of the vehicle in the event of a rollover to avoid an injury.[15] This

---

[14] (Emphasis supplied.)

[15] The McTaggarts presented evidence that Yamaha received customer complaints about leg injuries during rollover accidents in Rhinos and was aware of the results of simulation

argument is belied by Roger's testimony in which he acknowledged that if his Rhino rolled over, he should attempt to brace his feet on the floorboard "if [he] had time" and that a person operating a doorless vehicle should stay within the protection system of the vehicle "to the best of [his] ability." Roger further acknowledged that an operator would "probably not intentionally" stick his hands or feet out of a doorless vehicle during a rollover. Each of these statements indicates Roger's knowledge that it might not be possible for an operator to keep his legs inside of the vehicle during a rollover. Therefore, pretermitting whether Yamaha's argument regarding an individual's instinct to use his feet or hands to brace himself during a rollover demonstrates a misunderstanding regarding the risks that Roger voluntarily assumed, the record does not support such an argument.

Having considered the evidence, we conclude that the trial court erred by denying Yamaha's motions for directed verdict and judgment notwithstanding the verdict because the evidence demonstrated that Roger, "without coercion of circumstances, [chose] a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[16] Given the evidence in this case,

> the only conclusion that can be reached is that this is a case in which it is plain, palpable, and indisputable that [Roger] assumed the risk of [his] injuries, as a matter of law. . . . Accordingly, the judgment must be reversed and the case remanded to the trial court with direction to enter judgment granting appellants' motion for a directed verdict.[17]

2. Based on our holding in Division 1, we need not address Yamaha's remaining enumerations.

*Judgment reversed and case remanded. Miller, P. J., and Ellington, J., concur.*

---

testing, which revealed that approximately half of the participants instinctively put their foot out of the vehicle when the Rhino tipped over. According to one Yamaha employee, during one seven-month period, there were approximately either 50 or 200 reports of injuries to Rhino operators during rollovers.

[16] (Punctuation omitted.) *Young*, 225 Ga. App. at 892 (3).

[17] Id. at 893 (3). See *Kane v. Landscape Structures*, 309 Ga. App. 14, 18-20 (709 SE2d 876) (2011) (affirming the grant of summary judgment to the defendant because the child plaintiff voluntarily assumed the specific risk of climbing on and falling from the elevated roof of a playground structure). Compare *Hillman*, 240 Ga. App. at 433-434 (1) (reversing grant of summary judgment to the defendant because although the evidence established that the plaintiff assumed the general risk of falling off of a forklift, he did not assume the specific risk of being dumped by the forklift when it malfunctioned because of poor maintenance by the defendant).

DECIDED NOVEMBER 15, 2011 —
RECONSIDERATION DENIED DECEMBER 1, 2011

*Jones Day, David M. Monde*, for appellants.
*Childers, Schlueter & Smith, C. Andrew Childers*, for appellees.

