**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 11, 2015**

# In the Court of Appeals of Georgia

A14A2244. SMITH v. NT NAILS, LLC.

McFADDEN, Judge.

This is an appeal from the grant of summary judgment to the defendant in a slip-and-fall case. Cathy Smith filed a complaint seeking recovery for personal injuries allegedly sustained when she fell in a nail salon. The trial court granted the salon summary judgment because Smith knowingly and voluntarily chose to walk across the recently mopped floor. Smith appeals. Because the uncontroverted evidence shows that Smith and the salon's staff had equal knowledge of the hazard created by mopping a floor and encountered by walking across it and because Smith voluntarily exposed herself to that hazard, the trial court did not err in granting summary judgment to the defendants. We therefore affirm.

Summary judgment is properly granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." *Scrocca v. Ashwood Condominium Assn.*, 326 Ga. App. 226 (1) (756 SE2d 308) (2014) (citation and punctuation omitted).

Viewed in the light most favorable to Smith as the nonmovant, the record shows that on the night in question, Smith had gone to NT Nails for a manicure and pedicure. She was the last customer in the salon and the employees of the salon were preparing to close for the night. An employee mopped the entire floor of the salon while Smith was still receiving her pedicure. When the nail technician finished the pedicure, she gave Smith foam rubber pedicure slippers to walk in. Smith got up from the chair and walked across the floor toward the cash register to pay. After paying, she turned around and fell to the floor, injuring herself.

To survive a summary judgment motion in a slip-and-fall case,

> a plaintiff must come forward with evidence that, viewed in the most favorable light, would enable a rational trier of fact to find that the

2

defendant had actual or constructive knowledge of the hazard. At that point, the burden of production shifts to the defendant to produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety). If the defendant succeeds in doing so, the burden of production shifts back to the plaintiff to come forward with evidence that creates a genuine dispute of fact on the question of voluntary or causal negligence by the plaintiff or tends to show that any such negligence resulted from the defendant's own actions or conditions under the defendant's control.

*American Multi-Cinema v. Brown*, 285 Ga. 442, 444-445 (2) (679 SE2d 25) (2009) (citation omitted). "Voluntary negligence is applicable when the invitee knew or should have known of the hazard and proceeded." *Robinson v. Kroger Co.*, 268 Ga. 735, 743 (1) (493 SE2d 403) (1997).

Here, the trial court assumed for purposes of summary judgment that NT Nails had actual knowledge of the wet floor. But it found that NT Nails was nonetheless entitled to summary judgment because the undisputed evidence was that Smith's injury was caused by her disregard of a known risk and there was no issue of fact on the question of Smith's voluntary negligence. We agree. "If an invitee knows of the condition or hazard, [she] has as much knowledge as the proprietor does and then by voluntarily acting in view of [her] knowledge[, she] assumes the risks and dangers

3

incident to the known condition." *Ponder v. Brooks*, 256 Ga. App. 596, 598 (569 SE2d 267) (2002) (citation omitted).

Smith nevertheless argues that summary judgment was inappropriate because even though she knew of the hazard, she had no choice but to walk across the recently mopped floor to pay for her services and leave the salon. In essence, she argues that the trial court erred by finding that the undisputed evidence shows that she assumed the risk of injury.

Assumption of risk will defeat a plaintiff's claim only when the defendant has established that the plaintiff:

> (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed herself to those risks. Exposure to the known risk must be voluntary, the result of a deliberate choice. And, the defense of assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice whether to engage in the act or not.

*Bass Custom Landscapes v. Cunard*, 258 Ga. App. 617, 619-620 (1) (575 SE2d 17) (2002). To coerce is "[t]o compel by force or threat." Black's Law Dictionary (9th ed. 2009).

To support her contention that she was coerced into exposing herself to the risk of walking across the newly-mopped floor, Smith points to her own testimony. At her deposition, Smith testified that, "I was the last person in the shop and they were cleaning up. They started cleaning up, and I knew they were in a hurry to get out, and the girl put the little shoes on me and said, go pay, and I said, okay, and I was concerned because they had mopped, but there's only one way. It was the front door." She testified that the employees "were rushing and cleaning and they were ready to leave," which she knew because the nail technician said so in a telephone conversation with her husband – although she later admitted she could not understand that conversation as it was in a foreign language.

Such pressure is not a coercion of circumstances sufficient to defeat an assumption of risk defense. While we have found sufficient coercion in, for example, the circumstance of a person's employment – particularly where a direct order from a supervisor is involved, e.g. *Bass*, supra, 258 Ga. App. at 618, we have found assumption of risk as a matter of law where an employee chose a perilous course of conduct that he had been empowered to refuse. *Moore v. Service Merchandise Co.*, 200 Ga. App. 463, 464 (408 SE2d 480) (1991). Similarly we have found sufficient coercion where a tenant, who needed to get to work, fell on an ice-covered stairway

5

that was the sole means of egress from her apartment. *Hull v. Massachusetts Mut. Life Ins. Co.*, 142 Ga. App. 269 (235 SE2d 601) (1977). But we found assumption of risk as a matter of law where a nurse, "knowing that the hallway was wet from recent mopping, and having warned a visitor of the condition, slipped and fell in a hall way while carrying a lunch tray from her patient's room to a food cart." *Smith v. Bel-Arbor, Inc.*, 121 Ga. App. 739 (175 SE2d 146) (1970). "The fact that her elderly patient had displayed an eccentricity about having dirty dishes in her room," we held, "discloses no emergency whereby the plaintiff was required to make use of the hallway to remove the dishes from the room." Id. 121 Ga. App. at 739.

*Bel-Arbor* is on point. In *Hull* we distinguished *Bel-Arbor* explaining that "there was nothing making it necessary for the nurse to venture into the hall at that particular moment, instead of after the danger had subsided." *Hull*, 142 Ga. App. at 270. Here, as in *Bel-Arbor*, it might have been socially awkward or inconvenient for appellant to insist upon waiting until the danger had subsided; but there is no evidence of anything preventing her from doing so.

In her affidavit, Smith testified that she was "forced to walk across [the] recently mopped floor to pay her bill at the cash register as [NT Nails] and its agents were rushing her to leave," but she describes no facts that would support the assertion

6

that NT Nails forced her. Her belief that the employees of NT Nails were forcing her to leave is merely a conclusion of the ultimate issue – that she was coerced into facing the risk – and, in the absence of substantiating facts, does not create a question of fact as to her assumption of risk. She has pointed to no facts supporting the conclusion that the employees of NT Nails forced her to walk across the recently mopped floor. She did not testify that they told her she must leave or took any kind of action that required her to traverse the hazard of which she was aware, the recently mopped floor.

The only reference to the use of force is Smith's affidavit that she was forced to walk across the floor because the employees were rushing her. "In the absence of substantiating facts, a party's affidavit is self-serving and conclusory and cannot be used to support a motion for summary judgment." *Cantera v. American Heritage Life Ins. Co.*, 274 Ga. App. 307, 311 (617 SE2d 259) (2005) (citations omitted). See also *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 656 (2) (644 SE2d 514) (2007) (affidavit that stated defendant breached the standard of care but stated no "'particulars' [was] not sufficient to rebut the motion for summary judgment") (citations omitted); *Sullivan v. Fabe*, 198 Ga. App. 824, 826 (1) (403 SE2d 208) (1991) (plaintiff's statement that "neither I nor my wife owe the plaintiff anything"

7

is not one of fact, but a conclusion or allegation of the ultimate fact which is not sufficient to support a motion for summary judgment); *Johnson v. Crews*, 165 Ga. App. 43, 44-45 (299 SE2d 99) (1983) (statements in affidavit that defendant could not by the exercise of reasonable care have discovered or prevented the injury are conclusions bearing on the ultimate fact to be decided, which could not be utilized on a summary judgment motion). Smith's belief, standing alone, does not create a question of fact on the issue of coercion or, therefore, her assumption of risk.

Because Smith did not come forward with evidence that creates a genuine dispute of fact on the question of her assumption of risk, the trial court did not err in granting summary judgment to NT Nails.

*Judgment affirmed. Andrews, P. J., Doyle, P. J., Boggs and Branch, JJ., concur; Barnes, P. J. and Ray, J., dissent.*

8

A14A2244. SMITH v. NT NAILS, LLC.

RAY, Judge, dissenting.

I respectfully dissent from the majority's decision to affirm the grant of summary judgment to the defendant nail salon in this personal injury case. While I agree that there are issues of Smith's own negligence in crossing the wet floor to pay her pedicure bill so that she could leave the salon,[1] I do not think it is appropriate that this matter is taken away from the jury for its determination. Thus, I would reverse the trial court's order and remand this case to trial.

This case involves a claim for injuries from a slip and fall, and it is true that we have held in other cases that a plaintiff assumes the risk of injury when she knowingly walks on a wet floor and falls. Yet, this is not a normal slip and fall case. Under the facts as alleged here, a legitimate question exists as to whether Smith had any

---

[1] At trial, consideration of contributory and/or comparative negligence principles will play an important role.

reasonable alternative other than walking where she did, when she did, and if not, then a jury might conclude from the evidence that she did not assume the risk of her fall.

As outlined in the majority's opinion, Smith went to the Appellee's nail salon for a pedicure at the end of the business day. Indeed, she was the last customer that evening, and the staff at the salon began to mop the floor and prepare to close the salon while Smith's nails were still being painted. When the nail technician finished the pedicure, she gave the plaintiff foam rubber pedicure slippers to wear so as to protect the finish of Smith's newly painted nails until they were dry. Such slippers, apparently, are commonly worn after a pedicure. As the salon was closing, Smith was directed by the nail technician to go to the front to pay for the pedicure before leaving. The only path to the register in the front of the salon necessitated that she walk across the wet floor. Unfortunately, in completing the transaction, Smith fell on the slippery, wet floor and was injured.

The majority agrees with the trial court that, as a matter of law, Smith was responsible for her own injuries because she knew that the floor was wet and, thus, that she "disregarded a known risk or failed to exercise ordinary care for her own personal safety." Further, the trial court concluded that Smith was not forced to walk

2

across the wet floor, but did so on her own volition. The majority argues that she couldn't have been coerced to walk on the wet floor, as there was no force or threats utilized by the salon staff to make her leave. Accordingly, then, Smith must lose, or so says the majority.

This approach ignores, in my opinion, the reality of the facts before us. If the salon was closing and it was time for her to go, did Smith really have any other option but to walk across the wet floor so as to pay and leave? I am not so sure, which is why this case should be presented to a jury to resolve. If she did not have a choice about leaving and had to walk across the wet floor to do so, then we cannot say as a matter of law that she assumed the risk and therefore failed to exercise ordinary care for her safety.

The possibility that a plaintiff may not have legally assumed the risk of injury for walking in an area where she knew a possible danger lurked finds comfort in our precedent. For example, in *Hull v. Massachusetts Life*, 142 Ga.App. 269 (235 SE2d 601) (1997), we held that a tenant who came home for lunch during the work day and then slipped on ice outside of her apartment when returning to work was entitled to a jury trial in her case against her landlord, despite her awareness of the ice before she fell, because she had to leave to get back to work and it would be unreasonable to

require her to stay home. Also, in *Brennan v. Freight Room, Inc.*, 226 Ga. App. 531 (487 SE2d 109) (1997), we held that a restaurant patron who was injured in a fall while walking on a walkway as she was leaving the facility was entitled to a trial on her personal injury claim despite that she, obviously, knew that it was dark when she left and that the path was poorly lighted. In doing so, we found that it was a disputed fact as to whether an alternate safe means of egress was readily accessible to her. Thus, *Hull* and *Brennan* support the proposition that the circumstances of the situation matters. See *Myers v. Boleman*, 151 Ga.App. 506, 509 (3) (260 SE2d 359) (1979) ("[t]he doctrine of the assumption of the risk of danger applies only where the plaintiff, with a full appreciation of the danger involved and without restriction from his freedom of choice either ***by the circumstances*** or by coercion, deliberately chooses an obviously perilous course of conduct so that it can be said as a matter of law he has assumed all risk of injury") (citation omitted; emphasis supplied).[2]

---

[2] Compare *Moore v. Service Merchandise Co.*, 200 Ga. App. 463 (468 SE2d 480) (1991) (Summary judgment affirmed to the retailer on the delivery driver's claim for injuries when he fell on the wet loading dock of the retailer, as the delivery driver was aware that the dock was slippery due to rain and nonetheless accessed it to pick up packages. We noted that there was no evidence that the delivery driver was limited in his freedom of choice, as on previous occasions he had remained in his truck while the retailer's employees had handed him the packages, thus avoiding the perils of the loading dock).

What we know about the underlying case is that it was closing time, the employees were preparing to close (which included mopping the floor), Smith was the last customer in the salon, and Smith was directed by her nail technician once the pedicure was complete to go pay, which would require that she walk across the wet floor. Who are we to say, under these circumstances, that she had the choice to refuse? If this point is debatable, then a reasonable jury could find either way, which means that summary judgment is inappropriate.

I am authorized to state that Presiding Judge Barnes joins in this dissent.