**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 11, 2020**

# In the Court of Appeals of Georgia

A20A0522. THOMPKINS, et al. v. GONZALEZ-NUNEZ.

DILLARD, Presiding Judge.

Brian Thompkins and his employer, Old Dominion Freight Line, Inc., appeal the trial court's denial of their motion for summary judgment in this negligence action arising from an accident in which Enrique Gonzalez-Nunez was injured preparing to load tires into the trailer of a company truck. Specifically, the appellants argue that the trial court erred in rejecting their assumption-of-the-risk defense. For the reasons set forth *infra*, we reverse.

Viewing the evidence in the light most favorable to Gonzalez-Nunez (*i.e.*, the nonmoving party),[1] the record shows that the accident occurred on April 12, 2016,

---

[1] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012).

when Gonzalez-Nunez was working for Tri State Tire Company, loading and unloading trucks. According to Gonzalez-Nunez, when he arrived to load trailers, he would first take down the metal bars spanning the inside of the trailer. The bars run across the width of the trailer and are secured to vertical tracks in the trailer walls so that they can be positioned at a variety of heights to secure cargo.

On the day in question, Gonzalez-Nunez opened the trailer door of an Old Dominion truck, so that he and his manager could load tires into it. But when he did so, Gonzalez-Nunez discovered that one of the metal bars was hanging down on the left side of the trailer. At this point, Gonzalez-Nunez's manager left to get a tool to take out the screw on the right side of the bar, so it could then be removed.

While waiting on his manager, Gonzalez-Nunez attempted to remove the bar by himself. In doing so, he placed two tires on the right side of the trailer, stood on them, and tried to free the bar with his hands. And about three to five minutes later, Thompkins—an Old Dominion driver—entered the trailer, saw Gonzalez-Nunez unsuccessfully attempting to remove the bar, and tried to help him. Specifically, Thompkins used a broomstick to hold up the left side of the bar while Gonzalez-Nunez continued trying to free the bar on the right side. But on his third attempt to remove the bar, Gonzalez-Nunez turned to see if his manager had returned with the

2

necessary tool, and in "just a fraction of seconds," the bar fell down and injured his finger.

On March 2, 2018, Gonzalez-Nunez filed a complaint against the appellants, contending that their negligence resulted in his injury. The appellants answered, responding to the allegations of the complaint and asserting numerous affirmative defenses, including that Gonzalez-Nunez's claims were barred by the doctrine of assumption of the risk. Discovery then ensued, after which the appellants filed a motion for summary judgment, and Gonzalez-Nunez filed a response. Ultimately, the trial court denied the motion for summary judgment. Thereafter, we granted the appellants' application for an interlocutory appeal, and this appeal follows.

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[2] Furthermore, a *de novo* standard of review applies to an appeal from a grant or denial of summary judgment, and we "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3] Moreover, at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues,

---

[2] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[3] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

3

weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[4] Nevertheless, if there is no evidence sufficient to create a genuine issue as to "any essential element of [the] plaintiff's claim, that claim tumbles like a house of cards[,]" and all other factual disputes are rendered immaterial.[5] With these guiding principles in mind, we will now address the appellants' sole enumeration of error.

Specifically, appellants argue that the trial court erred by rejecting their assumption-of-the-risk defense and in denying their motion for summary judgment on that basis. We agree.

The affirmative defense of assumption of the risk bars recovery when it is established that a plaintiff, "without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not."[6] And in Georgia, a defendant asserting an

---

[4] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

[5] *McQuaig v. Tarrant*, 269 Ga. App. 236, 237 (603 SE2d 751) (2004); *accord Dyess v. Brewton*, 284 Ga. 583, 586 (669 SE2d 145) (2008).

[6] *Muldovan v. McEachern*, 271 Ga. 805, 807 (2) (523 SE2d 566) (1999) (punctuation omitted); *accord Smith v. NT Nails, LLC*, 331 Ga. App. 98, 99 (770 SE2d 646) (2015); *see also* Gregory P. Bright, *Reconciling an Old Dog's New Tricks: The California Supreme Court Remodels Assumption of Risk in Knight and Ford*, 26

4

assumption-of-the-risk defense must establish that the plaintiff "(1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks."[7] Furthermore, knowledge of the risk is "the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part."[8] If all these elements are satisfied, the plaintiff's assumption of the risk is "a complete defense to negligence."[9] And

Beverly Hills B. Ass'n J. 149 (1992) (noting that "like the defense of contributory negligence (with which assumption of risk is closely associated), the Classic Model of assumption of risk developed late in the formulation of the common law and principally was applied to defeat recovery in master/servant cases," and "[i]t is the plaintiff's understanding of the existence of the risk or likelihood of harm that is the basis of the defense," so "[u]nder the assumption of risk doctrine, while a plaintiff does not agree to be injured, he or she agrees to accept the risk of injury").

[7] *Watson v. Reg'l First Care, Inc.,* 335 Ga. App. 740, 741 (782 SE2d 822) (2016) (punctuation omitted); *accord Muldovan*, 271 Ga. at 807-08 (2);*Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996); *Monitronics Intern., Inc. v. Veasley*, 323 Ga. App. 126, 139 (4) (2013); *Smith*, 331 Ga. App. at 99; *Findley v. Griffin*, 292 Ga. App. 807, 809 (666 SE2d 79) (2008); *Abee v. Stone Mountain Mem. Ass'n*, 169 Ga. App. 167, 169 (1) (312 SE2d 142) (1983) (physical precedent only).

[8] *Watson,* 335 Ga. App. at 741; *accord Vaughn*, 266 Ga. at 864 (1); *Monitronics Intern., Inc.*, 323 Ga. App. at 139 (4).

[9] *Saulsbury v. Wilson*, 348 Ga. App. 557, 560 (1) (823 SE2d 867) (2019) (punctuation omitted); *accord Christian v. Eagles Landing Christian Academy, Inc.*, 303 Ga. App. 113, 115-16 (2) (692 SE2d 745) (2010).

while assumption of the risk is ordinarily a jury question, "in plain, palpable, and indisputable cases resolution of the issue by a jury is not required."[10]

Here, during Gonzalez-Nunez's deposition, he testified about his experience moving the adjustable bars inside trailers, as well as his specific, subjective knowledge of the risks involved in doing so. Indeed, Gonzalez-Nunes testified that, prior to the incident at issue, he had experience removing metal bars from Old Dominion trailers. He understood how they worked and knew there was "a pinch point" if a bar lowered while his finger was still in the track. Gonzalez-Nunez also understood that he needed the tool his manager went to retrieve in order to remove the bar. Nevertheless, when asked why he left his right hand in the "pinch point" while his manager was gone, Gonzalez-Nunez testified that he did so because he was trying to remove the bar. And while Gonzalez-Nunez testified that he knew he needed a tool to remove the bar, he explained that his "manager took too long, and [he] was busy, and . . . had other things to do."

So, Gonzalez-Nunez knew that if the bar slipped off of the broomstick Thompkins was holding while his finger was in the track, he would be injured. And

_____

[10] *Yamaha Motor Corp., U.S.A. v. McTaggart*, 313 Ga. App. 103, 106 (1) (720 SE2d 217) (2011) (punctuation omitted); *accord Young v. Brandt*, 225 Ga. App. 889, 891 (3) (485 SE2d 519) (1997).

6

when asked if he was concerned that the bar could slip while it was being held up by the broomstick, Gonzalez-Nunez testified that he was indeed worried, but he was "watching it to make sure it wouldn't slip so that [he] could take [his] finger out." Gonzalez-Nunes also did not think that he needed to use his left hand to help hold up the bar as a safety measure. In sum, while it crossed Gonzalez-Nunez's mind that his finger could get hurt engaging in these actions, he nevertheless "decided to put [his] finger in the pinch point to try to free the bar . . . ." And by doing so, he assumed the risk of the injury that followed.

Nevertheless, Gonzalez-Nunez maintains that this is not an assumption-of-the-risk case, but rather, one involving contributory negligence that must be decided by a jury. And he is correct that "an act of contributory negligence or an error in judgment on the part of the plaintiff is not necessarily an assumption of risk, and the

7

rule does not extend to a plaintiff assuming the risk of the negligent act of another."[11]

Consider the following example:

> A pedestrian who walks across the street in the middle of a block, through a stream of traffic traveling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is *contributory negligence pure and simple; it is not assumption of risk.*[12]

But when assessing whether a plaintiff has assumed the risk, "the applicable standard focuses on the plaintiff's knowledge; it is a subjective one, geared to the *particular*

---

[11] *Watson,* 335 Ga. App. at 741; *see Hillman v. Carlton Co.*, 240 Ga. App. 432, 435 (1) (522 SE2d 681) (1999) ("Assumption of risk means the plaintiff is fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless. Contributory or comparative negligence means the plaintiff, though exposing himself to danger, nevertheless is unaware of the defendant's negligence and thus expects the defendant to act or to have acted with reasonable care."). In direct contrast to his testimony, Gonzalez-Nunez's complaint alleges that Thompkins alone was attempting to remove the safety bar when it fell and injured him. Indeed, the complaint alleges that as Gonzalez-Nunez loaded tires into the trailer, Thompkins "attempted to move a safety bar, which he dropped onto [Gonzalez-Nunez]." But Gonzalez-Nunez later testified that he had been attempting to remove the bar himself for several minutes before Thompkins arrived to help him. So, other than alleging that the bar slipped off the broomstick somehow and that appellants were negligent, Gonzalez-Nunez has not articulated a specific negligent act or omission on the part of either appellant that proximately caused his injury.

[12] *Little Rapids Corp. v. McCamy*, 218 Ga. App. 111, 113 (1) (460 SE2d 800) (1995) (punctuation omitted).

*plaintiff and his situation*, rather than that of a reasonable person of ordinary prudence who appears in the completely separate defense of contributory negligence."[13]

Of particular relevance here, the knowledge that a plaintiff who assumes a risk "must subjectively possess is that of the *specific, particular* risk of harm associated with the activity or condition that proximately causes injury."[14] In other words, the knowledge requirement does not "refer to a comprehension of general, non-specific risks."[15] Instead, this knowledge must be that of "the specific, particular risk of harm

---

[13] *Watson,* 335 Ga. App. at 741 (emphasis supplied); *accord Muldovan*, 271 Ga. at 808 (2); *Findley v. Griffin*, 292 Ga. App. 807, 810 (2) (666 SE2d 79) (2008); *Williams v. Mitchell Cty. Elec. Membership Corp.*, 255 Ga. App. 668, 671 (1) (566 SE2d 356) (2002); *see Sutton v. Sumner*, 224 Ga. App. 857, 859 (482 SE2d 486,) (1997) ("In assessing whether a plaintiff had the requisite knowledge of the danger and appreciation of the risks, a subjective standard applies, that is, what the particular plaintiff knew, understood and appreciated.").

[14]*Muldovan*, 271 Ga. at 808 (2) (emphasis supplied); *accord Vaughn*, 266 Ga. at 864 (1); *Cham v. ECI Mgmt. Corp.*, 353 Ga. App. 162, 166 (1) (b) (836 SE2d 555) (2019); *Downes v. Oglethorpe Univ., Inc.*, 342 Ga. App. 250, 253 (1) (802 SE2d 437) (2017); *Hillman*, 240 Ga. App. at 434 (1).

[15] *Saulsbury*, 348 Ga. App. at 559-60 (1) (punctuation omitted); *accord Vaughn*, 266 Ga. at 864 (1); *Gilreath v. Smith*, 340 Ga. App. 265, 268 (1) (797 SE2d 177) (2017); *King v. Anglin*, 245 Ga. App. 302, 303 (535 SE2d 535) (2000); *Jimenez v. Morgan Drive Away, Inc.*, 238 Ga. App. 638, 639 (1) 519 SE2d 722, 724 (1999).

9

associated with the activity or condition that proximately causes injury."[16] And this

exactly the type of knowledge Gonzalez-Nunez possessed at the time of the incident

at issue.

Even so, Gonzalez-Nunez cites numerous contributory-negligence cases in an

attempt to analogize them to the instant case. But those cases all involved a plaintiff

with merely *general* knowledge that harm could occur, and who could not possibly

foresee the *specific* act of negligence by the defendant that proximately caused the

particular type of harm that resulted.[17] This is not such a case. Indeed, a far more

---

[16] *Saulsbury*, 348 Ga. App. at 560 (1); *accord Muldovan*, 271 Ga. at 808 (2)*; Vaughn*, 266 Ga. at 864 (1); *Gilreath*, 340 Ga. App. at 268 (1); *Champion v. Pilgrim's Pride Corp. of Delaware*, 286 Ga. App. 334, 336 (a) (649 SE2d 329) (2007).

[17] *See, e.g.*, *Vaughn*, 266 Ga. at 863-65 (1) (holding that a jury instruction on assumption of the risk was unwarranted when, although the plaintiff policeman was traveling at a high rate of speed through an intersection with the car's siren on and blue lights flashing, he had no knowledge that the defendant's truck would fail to yield to him, causing the accident in which he was injured); *Hillman*, 240 Ga. App. at 433-34 (1) (holding that the plaintiff did not assume the risk of his injury when he "had actual knowledge of the inherent risk he could fall if he stood on or was raised by the forks [of a forklift], but his knowledge did not extend to the possibility that because of poor maintenance [by the defendant], the forks would malfunction, tilt forward, and dump him onto the ground"); *Trustees of Trinity Coll. v. Ferris*, 228 Ga. App. 476, 476 (3) (491 SE2d 909) (1997) (holding that the defendant was not entitled to a directed verdict based on an assumption-of-the-risk defense when, "although [the plaintiff] was aware of the general risks inherent in rowing, the evidence did not require a finding that he was aware of and acquiesced in the specific risk that he would be injured in the manner he was as a result of appellants' gross negligence");

10

analogous decision is *Tennison v. Lowndes-Echols Association for Retarded Citizens*,[18] which concerned the delivery of lumber pallets by the plaintiff to a business.[19] In that case, noticing that the business's employee was having trouble lifting the pallets onto a forklift because it was too small, the plaintiff voluntarily climbed on top of a pallet to assist him.[20] Then, when the employee moved the forklift's tines, the pallet shifted and the forklift overturned, injuring the plaintiff.[21] The plaintiff eventually sued the business and the employee for negligence, but we

---

*Little Rapids Corp.*, 218 Ga. App. at 112-14 (1) (460 SE2d 800) (1995) (holding that the plaintiff did not assume the risk of loose boxes falling on him when, although he knew of the type of harm posed by loose boxes being stacked on top of a secure load and he was in close proximity to the boxes, his injury occurred when the defendant's employee knocked the boxes off the top of the stack while using a forklift); *Beringause v. Fogleman Truck Lines, Inc.*, 200 Ga. App. 822, 823-25 (4) (409 SE2d 524) (1991) (holding that a plaintiff did not assume the risk of harm, when, while he may have been contributorily negligent in failing to avoid the accident, he could not foresee that the defendant's truck would swerve out of its lane into oncoming traffic and cause a head-on collision, and after the truck swerved, the plaintiff did not make a conscious and voluntary decision to proceed with the collision).

[18] 209 Ga. App. 343 (433 SE2d 344) (1993).

[19] *Id.* at 343.

[20] *Id.*

[21] *Id.*

affirmed the trial court's grant of summary judgment to the defendants on their assumption-of-the-risk defense, holding that

> *[p]retermitting the issue of whether [the employee] was negligent in his operation of the forklift*, [the plaintiff] knew of the danger of climbing on top of a 14-foot stack of lumber, acknowledged the risk of the possible shifting of the lumber and that the forklift could tilt over, and voluntarily exposed himself to that known risk of danger.[22]

Thus, in *Tennison*, the defendants' alleged negligence did not matter; the question was whether the plaintiff voluntarily exposed himself to a known risk of danger. So too here.

As in *Tennison*, our determination of whether appellants have proven an assumption-of-the-risk defense is based on Gonzalez-Nunez's subjective knowledge and his particular situation.[23] Indeed, Gonzalez-Nunez admitted in his deposition that he was familiar with and had experience removing the metal bars in the appellants' trucks, realized the bar was stuck, understood a tool he did not have was *necessary* to free the bar from the track, knew the bar could slip off Thompson's broomstick, and knew his finger could be pinched if it was inside the track when the bar moved.

---

[22] *Id.* at 344 (emphasis supplied).

[23] *See supra* note 14-16 & accompanying text.

12

Thus, not only *could* Gonzalez-Nunez foresee the risk that his finger could be injured if the bar slipped off of the broomstick, he *did* foresee that this specific injury could occur. And with a full appreciation of this danger, Gonzalez-Nunez nevertheless attempted to dislodge the bar with his bare hands, including placing his finger inside the track. This case is a textbook example of assumption of the risk.[24]

In sum, Gonzalez-Nunez's testimony establishes that he assumed the risk and satisfies the plain, palpable, and undisputed standard required for the grant of summary judgment.

---

[24] *See Fowler v. Alpharetta Family Skate Ctr., LLC*, 268 Ga. App. 329, 332 (3) (601 SE2d 818) (2004) (holding that an experienced ice skater who was injured when another skater collided with him while skating backwards assumed the risk of a head injury when he knew specifically that colliding with other skaters and head injuries were a potential risk of ice skating because he had asked about renting a helmet and he voluntarily chose to skate); *Kroger Co. v. Williams,* 257 Ga. App. 833, 833-34, 836 (572 SE2d 316) (2002) (holding that summary judgment was proper based on an assumption-of-the-risk defense when the plaintiff, who was delivering milk to a grocery store, was injured by a pallet of milk crates that fell on him while he was assisting a grocery store employee unload the crates because the plaintiff knew that milk fell during the unloading process "all the time" and was subjectively aware of the specific risk of harm posed); *Roberts v. Carter*, 214 Ga. App. 540, 541-42 (448 SE2d 239) (1994) (holding that the trial court erred by rejecting the defendant's assumption-of-the-risk defense when the plaintiff, who was an experienced mechanic, "fully comprehended and acquiesced in the danger of working under [an] unsupported truck, [and] he assumed the risks incident to his own voluntary actions, which were the sole proximate cause of his injuries").

13

For all these reasons, we reverse the trial court's denial of summary judgment to the appellants.

*Judgment reversed. Rickman and Brown, JJ., concur.*