739.  FINCHER, marshal, *v.* COLLUM.

1. Under a "general welfare" charter clause in usual form, a city council may pass an ordinance requiring owners of dogs to register them, secure tags, and pay fees therefor, and authorizing the killing of all untagged dogs; also making the owners of untagged dogs subject to punishment. The fact that the tag fees on female dogs are higher than those on male dogs does not render such an ordinance invalid. Such ordinances are sanitary, and not fiscal, in their nature; are an exercise of the police power, and not of the taxing power.

2. The charter of the City of Dalton, approved February 24, 1874 (Acts 1874, p. 181), and the subsequent acts amendatory thereof, represent the entire charter powers of the city; and provisions contained in prior charters but omitted from this act are no longer in force.

Habeas corpus, from city court of Dalton—Judge Longley. August 23, 1907.

Argued October 9,—Decided October 29, 1907.

Collum was convicted in the police court of Dalton for keeping a dog in violation of the "dog ordinance" of that city. He took habeas corpus against the marshal of the city, and was released on the ground that the ordinance is void; and the city brings error. The ordinance (omitting immaterial parts) is as follows: "It shall be unlawful to keep, maintain, or allow kept on one's premises, within the City of Dalton, any dog not tagged as hereinafter set out. The clerk is hereby directed to prepare suitable metal tags for sale for those desirous of keeping dogs within the City of Dalton. Tags to be placed on male dogs shall be sold at one dollar each, and tags to be placed on female dogs shall be sold at five dollars each. . . Such tags, when attached to the neck of said animal, shall protect said animal from being killed during the year within which same is sold, except as hereinafter provided. The police force is hereby required to kill all dogs, male or female, found within the limits of the City of Dalton, after the first day of June, 1907, which are not protected by a proper tag, as hereinbefore set out, and they are further required to kill all dangerous, vicious, and mad dogs found within the limits of said city, whether they shall be tagged or not; and nothing herein contained shall be construed to prevent the killing of such vicious, dangerous, and mad dogs. The owner of any dog found within the limits of Dalton after the first day of June, 1907, and not bearing the tag herein provided for, shall be guilty of a violation of this ordinance; and the word 'owner,' as herein used, shall be construed to mean any person having such dogs in charge, or allowing the same kept on any premises owned or occupied by him." Violations are to be punished in accordance with the penal ordinance of the city.

It is alleged, in the petition for habeas corpus, that the ordinance is void because it is a tax ordinance, and by the city charter (§§44, 78) license fees and taxes can be enforced only by

execution. Also that it is void "because it imposes a license fee or tax of one dollar on male dogs, and a license fee or tax of five dollars each on female dogs, and therefore violates the constitutional provision that 'all taxation shall be uniform on the same class of subjects;'" especially in the light of §4 of the Political Code, which says that "the masculine gender shall include the feminine and neuter." Also that it is void because of lack of authority in the charter of Dalton to regulate any dogs except such as are "straying at large within the corporate limits," while the ordinance attempts to make illegal the keeping of dogs on the citizens' own premises. In this connection the ordinance is alleged to be "an oppressive and tyrannical usurpation of power and an illegal invasion of the rights of a citizen and resident of said city." It is further alleged, that "if said ordinance is claimed to be a police regulation to promote the peace, health, or good order of the city, it is wholly impotent, void, and illegal as such, being inconsistent with the laws of Georgia, and, instead of being a police protection, is just the opposite, its effect being to turn loose upon the streets of said city, under the protection of a license, every vicious dog in the city, whose owner buys a tag for said dog, and puts the same on, said tag having on them 'Licensed Dog,' and is no protection to the children or women or others on the public street against mad or vicious dogs, as a muzzle would be." For these reasons it is averred that the restraint under the conviction under the ordinance is "wholly illegal, void, senseless, tyrannical, oppressive, and malicious."

*Julian McCamy,* for plaintiff in error.

*C. D. & F. K. McCutchen,* contra.

POWELL, J. (After stating the facts.)

1. If the ordinance were adjudged to be a tax ordinance, the question arising from the discrimination in the amount imposed on female dogs and that imposed upon the males might be serious; though we are inclined to think that the subtle influence which she-dogs possess of attracting all the he-dogs in the neighborhood to their immediate vicinity at stated periods, thereby making themselves "attractive nuisances," as it were, might furnish a legitimate basis for putting bitches in a special taxing class. Still, just here the present complaining party would be met with the obstacle that he owns a dog, and not a bitch; and favored classes

are not allowed to complain of discriminations in their favor. *Mayor* v. *Simmons,* 96 *Ga.* 480 (3) (23 S. E. 508) ; *Reid* v. *Mayor,* 80 *Ga.* 757-8 (6 S. E. 602). However, the ordinance is not a tax ordinance, but a police regulation. "The power to regulate the keeping of dogs and to enforce such regulations by fine, forfeitures, and penalties is recognized as one within the police power." This power of regulation may lawfully be exercised through a requirement that all persons keeping dogs on their premises shall register the same, procure a badge for each dog, and pay a fee. *Griggs* v. *Macon,* 103 *Ga.* 602 (30 S. E. 561) ; 1 Dill. Mun. Corp. (4th ed.) 212, note 2; Cole v. Hall, 103 Ill. 30; Commonwealth v. Markham, 70 Ky. (7 Bush) 486; Van Horn v. People, 46 Mich. 183 (9 N. W. 246, 41 Am. R. 159); Carthage v. Rhodes, 101 Mo. 175 (14 S. W. 181, 9 L. R. A. 352) ; Gibson v. Harrison, 69 Ark. 385 (63 S. W. 999, 34 L. R. A. 263) ; Sentell v. N. O. R. Co., 166 U. S. 698 (17 Sup. Ct. 693, 41 L. ed. 1169). That bitches are taxed more than males works no invalidity. Hendrie v. Kalthoff, 48 Mich. 306 (12 N. W. 191). Such measures are sanitary, not fiscal. Commonwealth v. Markham, supra. The nature and habits of dogs make them the special subjects of the police power. Despite the fact that the virtues of the dog have commanded the favorable attention of Senator Vest and others who have paid him many glowing tributes, still he has not a universal good name. There are good dogs and bad dogs. Holy Writ has but few good words for dogs. Note the unfavorable categories in which they are placed: "For without are dogs, and sorcerers, and whoremongers, and murderers, and idolaters, and whosoever loveth and maketh a lie." Rev. 22:15. "Thou shalt not bring the hire of a whore, or the price of a dog, into the house of the Lord thy God for any vow; for even both these are abomination unto the Lord thy God." Deut. 23: 18. "Beware of dogs, beware of evil workers, beware of the concision." Phil. 3:2.

We have no disposition to take issue with the unbroken current of authority which says that dogs are under the special watch and ward of the police power. Take our canine citizenship out from under the dominion of the police power, and every municipality which finds itself in the throes of a mad-dog scare will be exposed to the chagrin of seeing its ordinances, hastily drawn to meet the emergency, resisted by defenses and assailed by injunctions predi-

cated upon the thirteenth, fourteenth, and fifteenth amendments to the Federal constitution. Shall pointers and setters or yellow curs be the sufficient cause for clash between State authorities and Federal courts? Shall a day come when a "grandfather clause" will be the necessary adjunct to every town dog law? In the light of such possibilities public policy forbids the courts to interfere, or to do anything which will tend to diminish the hold of the police power upon the subject; although to leave the subject as it is may occasionally result in the "senseless, tyrannical, oppressive, and malicious" restraint of some good citizen.

2. However, it is not every city government that possesses, untrammeled by limitations, this subtle something which we call the police power. Let us examine the charter of Dalton to see how far this city is authorized to go on this dog question. Under an unlimited "general welfare clause" the ordinance would be valid. *Crum* v. *Bray,* 121 *Ga.* 709 (49 S. E. 686). Has Dalton such power? We will review briefly its charters. On December 29, 1847 (Acts 1847, p. 41), an act was passed converting the village of Cross Plains into the City of Dalton. By §16 of that act "The mayor and council shall have power to pass such ordinances as they may deem advisable for the management of all hogs, dogs, horses, mules, and other stock, *straying at large* within the corporate limits." On January 18, 1852, an act was passed repealing the act of December 15, 1847. On December 28, 1853 (Acts 1853-4, p. 235), an act was passed to incorporate the City of Dalton, in lieu of the Town of Dalton. In §24 of this last-mentioned act it was recited that the act of January 15, 1852, repealing the act of December 29, 1847, incorporating the City of Dalton, had not been acted under; and the actions of the mayor and city council during the years 1852 and 1853 were ratified and declared legal and valid. In this charter no reference is especially made to the regulation of dogs and stock, but an unlimited "general welfare" clause appears. On February 24, 1874, there was passed (to quote the title) "An act to consolidate, amend, and codify the various acts incorporating the City of Dalton in the county of Whitfield, and the various acts amendatory thereof, and to define the duty of the mayor and council and other officers of said city." This act does not deal specifically with the question of dogs or stock, but contains a "general welfare" clause in usual

form. Under this charter, the Supreme Court in the case of *King* v. *Ford,* 70 *Ga.* 628, upheld an ordinance by which the city marshal of Dalton justified his conduct in suppressing the pranks of a "sportive filly," which, as appears from the record in that case, gave considerable annoyance, by her divers sundry pranks and gambols, to the quiet-loving citizenship of that most excellent city. It may be interesting to note that the fathers of the young gentlemen who have so fervently and ably argued the present case in this court for the respective sides of the issue were in that case likewise opposed, one to the other. "As the mantle of the elder Pitt fell upon the younger Pitt," etc. But to proceed with the decision of the case: if the 16th section of the act of 1847 is to be considered as still in force, as is contended by defendant in error, the express authority to regulate dogs and stock "running at large" might, under the principle of expressio unius exclusio alterius, be considered a restriction upon the right to regulate dogs kept upon the premises of the owner. See *Mayor and Council of Waycross* v. *Walker,* 116 *Ga.* 221 (42 S. E. 375). We think, however, that this section is no longer a part of the charter of Dalton; the repealing act of 1852, as well as the omission of the provisions of the section from the new charters of 1854 and 1874, seems to have eliminated it, and to have left the "general welfare clause" untrammeled by its provisions. Indeed, we think that the act of 1874 and the subsequent acts amendatory thereof constitute the only existing charter powers of the City of Dalton. The language in which the title to the act of 1874 is couched indicates a clear intention to cover the entire subject-matter, and to repeal such portions of former charters as were not therein included. *McVicker* v. *Conkle,* 96 *Ga.* 594 (24 S. E. 23); *Central Railroad* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). "The general rule, that when a statute not merely cumulative of the common law or of previous statutes, and not made to cure the deficiencies thereof, is designed to create a new and independent system, and to dispose of the whole subject of legislation, it is the only law on that subject and without an express repealing clause displaces the old statutes, has been almost universally applied to codes and revisions." 26 Am. & Eng. Enc. Law (2d ed.), 733. We conclude, therefore, that the City Council of Dalton had the charter power to pass the ordinance; that it is a reasonable

exercise of the police power; that, being an exercise of the police power and not a revenue or tax ordinance, provisions which relate to taxes and ordinary license fees are not applicable; in fine, that there is no reason for declaring the ordinance void.

If in the discussion we have been led away from wonted judicial serenity and seriousness, our apology is that the strenuousness with which the collection of this fine of one dollar and costs has been resisted, and with which that resistance has been resisted; the vehemence of language in the pleadings; the volume of matter in the briefs; the earnestness with which all these questions have been presented (and we must confess that the young men have argued the matter with consummate skill and ability), when brought into contrast with the actual subject-matter of the controversy, present a phase of humor that has tempted us aside.

*Judgment reversed.*