**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 17, 2017**

# In the Court of Appeals of Georgia

A16A1747. GILREATH v. SMITH et al.

BRANCH, Judge.

While pet sitting for Bruce and Jodi Smith, Josephine Gilreath was attacked and injured by the Smiths' rooster, which caused a serious infection with long-term consequences. Gilreath filed suit, but the trial court granted summary judgment in favor of the Smiths on the ground that Gilreath assumed the risk. Gilreath appeals.

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

*Ansley v. Raczka–Long*, 293 Ga. 138, 140 (2) (744 SE2d 55) (2013) (citations omitted); see also *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). Our review is de novo. *Ansley*, 293 Ga. at 140 (2).

Construed in favor of Gilreath, the record shows that for approximately nine years prior to the incident, Gilreath was self-employed as a pet sitter doing business as Crabapple Critters. During that time, she took care of, in her own words, "horses, dogs, cats, all sorts of animals." Gilreath belongs to the National Association of Professional Pet Sitters. Although she had worked briefly on two farms, taking care of horses, prior to working for the Smiths, Gilreath did not have any training or experience with chickens. Gilreath testified that as a pet sitter, she has a responsibility "to a point" to educate herself about the kind of animals she would be working with but that prior to accepting the job with the Smiths, she had not done any research on how to care for roosters and had not heard anything about their temperament.

For several years leading up to the incident, the Smiths had three dogs and some chickens, including at least one rooster named Sam.[1] The chickens, including

---

[1] The Smiths occasionally had additional roosters, but not at the time of the incident in this case.

Sam, were kept in a coop that had two signs on it, one that said "WELCOME" and one that said "CAUTION AREA PATROLLED By ATTACK ROOSTER Security Co." About one year prior to the incident at issue in this case, Sam chased Jodi Smith's mother, "flew up at her, and hit her in the leg with one of his spurs." And at some point prior to the incident, Sam had attacked Jodi Smith, as well. But the Smiths never told Gilreath that the rooster had in fact attacked Jodi and her mother.

Starting in about 2012 and prior to the incident at issue in this case, Gilreath provided pet sitting services to the Smiths on at least two occasions, including taking care of the chickens. In October 2013, for example, the Smiths hired Gilreath to watch the animals for four days. On that occasion, Gilreath was instructed, among other things, to feed the chickens, which required Gilreath to open the door to the coop and fill up the water dishes. As a part of the instructions, Jodi Smith informed Gilreath, "You do not have to fill them up if you feel uncomfortable with Sam the Rooster. I use a garbage can lid to separate myself from him." In January 2014, Gilreath again took care of the Smith animals. In connection with that job, Jodi Smith gave instructions to Gilreath in a Facebook message to "Just throw food into cages. Rooster will attack!" which Gilreath admitted was not vague. In a verified interrogatory response, Gilreath admitted that the Facebook message conveyed that

there was "danger of a rooster attack." Gilreath further admitted that although she had a choice not to take the job, she agreed to feed the chickens, including Sam, after receiving that warning.

Then in April 2014, Jodi Smith again hired Gilreath to pet sit for the same animals, including the rooster. Because Gilreath was also asked to retrieve eggs, Smith knew that Gilreath would have to open the door to the coop to perform her job. Smith did not give Gilreath any additional warnings about the rooster on this occasion. On April 5, Gilreath came to the Smith house and opened the door to the coop to feed the chickens, whereupon the rooster "charged through the open door, . . . set upon [her], spurring and pecking [her] and inflicting deep wounds on [her] legs." Gilreath developed infections as a result of the attack and had to undergo months of antibiotic treatments, following which she developed a secondary infection that caused further complications.

In November 2014, Gilreath filed suit, alleging that the Smiths failed to perform their duties to her as owners of land (OCGA § 51-3-1) and as keepers of a vicious or dangerous animal under OCGA § 51-2-7 and as required by a Roswell city ordinance. The Smiths answered; raised defenses, including that Gilreath had assumed the risk of the rooster attack; and, following discovery, moved for summary

4

judgment on that ground and others. The trial court granted the motion based on assumption of the risk. The court found that the Smiths had advised Gilreath about the rooster's propensity to attack on two occasions prior to the incident: in October 2013, when they suggested using a garbage can lid to fend Sam off, and in January 2014, when they warned Gilreath that the "[r]ooster will attack!" The court found that the warnings "were plain, palpable, indisputable and accurately related the risk of the rooster attacking [Gilreath]." The court concluded, therefore, that in April 2014 Gilreath assumed the risk of injury because she had actual knowledge of the danger posed by the rooster yet chose to accept the job to feed the chickens and rooster anyway. Gilreath appeals that ruling.

1. The trial court correctly held that Gilreath assumed the risk of injury based on the law of that doctrine:

> The defense of assumption of the risk of danger applies when the plaintiff, with a full appreciation of the danger involved and without restriction of his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the

5

knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

*Bodymasters Sports Indus. v. Wimberley*, 232 Ga. App. 170, 173-174 (1) (c) (501 SE2d 556) (1998) (citation and punctuation omitted). In short, "[a]ssumption of the risk is a matter of knowledge of the danger and intelligent acquiescence in it." *Griffiths v. Schafer*, 223 Ga. App. 560, 562 (478 SE2d 625) (1996) (citation omitted).

Here, in connection with prior pet-sitting at the Smiths, Gilreath had been warned of the relevant danger — that the rooster would attack and that a garbage can lid was useful for controlling the rooster. Gilreath claims that if she had known that the rooster had actually attacked Jodi Smith and Jodi's mother, she "probably" would not have taken the job. But we fail to see a difference from being warned that the rooster "will attack" from a warning that others had already been attacked. See *Lundy v. Stuhr*, 185 Ga. App. 72, 74 (363 SE2d 343) (1987) (sign on kennel stating that dog "[w]ill bite" required kennel attendant at a minimum "to exercise special caution to prevent the dog from escaping, to be aware that the dog was unpredictable . . . , and might bite"); see also *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353, 356 (1) (498

6

SE2d 583 (1998) (summary judgment upheld based in part on warning plaintiff received three months before the injury).

Second, Gilreath has not raised an issue of fact regarding whether the Smiths had superior knowledge of the risks associated with the danger. Although the Smiths knew that the rooster had attacked two people, there is no evidence that they knew that the rooster could cause wounds or infections of the sort that Gilreath suffered. See generally *The Landings Assoc. v. Williams*, 291 Ga. 397, 399 (728 SE2d 577) (2012) ("true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property") (citations and punctuation omitted). Thus even though Gilreath testified that if she had known how dangerous the rooster was, she would not have taken the job, she did not show that the Smiths knew of a greater danger than she did. Moreover, "[o]rdinarily, there is no duty to give warning to the members of a profession against generally known risks." *Lundy*, 185 Ga. App. at 74 (punctuation and citation omitted). And Gilreath, a professional pet sitter with at least nine years of experience, admitted that she had a responsibility to educate herself about the animals she takes care of yet failed to do so for roosters. The Smiths cannot be blamed if Gilreath failed to inform herself of those risks.

7

Third, Gilreath admitted that she chose to take the job knowing that she had been told that the rooster would attack. She admitted that she could have turned down the job but chose not to.

In short, Gilreath had equal knowledge of the danger and risks and acquiesced in exposing herself to the risk without taking any precautions. "Whether a party assumed the risk of his injury is a jury question that should not be decided by summary adjudication unless the defense is conclusively established by plain, palpable and undisputed evidence." *Bodymasters*, 232 Ga. App. at 174 (1) (c) (punctuation and citation omitted). But here, as the trial court held, the defense was established in accordance with that standard.[2] See *Lundy*, 185 Ga. App. at 75 (experienced kennel attendant assumed the risk of being bit when he was warned by sign on dog's kennel that dog "[w]ill bite" yet proceeded to open kennel and care for dog); compare *Sutton v. Sutton*, 145 Ga. App. 22, 25 (243 SE2d 310) (1978)

---

[2] Gilreath relies on *Shepard v. Streetman*, 198 Ga. App. 474 (402 SE2d 87) (1991), for the proposition that summary judgment should not be granted because an employer has a duty not to give orders that subject the worker to an unreasonable risk of injury. But that case is distinguishable because Gilreath was asked not simply to perform work near the rooster but to take care of the chickens which included the rooster, including opening the coop door to do so.

8

(defendant knew dangerous and vicious nature of bull to charge a person but failed to warn invitee of this peril).

2. Gilreath contends that summary judgment should not have been granted because the Smiths violated OCGA § 51-2-7, which provides:

> A person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash. The foregoing sentence shall not apply to domesticated fowl including roosters with spurs. The foregoing sentence shall not apply to domesticated livestock.

(Emphasis supplied). But applying this statute, this Court has held that "[i]f the plaintiff does not present evidence that the owner had superior knowledge of [the animal's] temperament, then the owner is entitled to summary judgment." *Durham v. Mason*, 256 Ga. App. 467, 468 (1) (568 SE2d 530) (2002) (footnote omitted). As shown above, Gilreath failed to present any such evidence. Thus Gilreath has provided no evidence to show that the Smiths engaged in careless management of the rooster by asking a professional pet sitter to take care of the rooster, which was kept

9

in a coop, and warning the sitter that the rooster "will attack!" and that a garbage can lid can be useful in dealing with the rooster.

3. Gilreath also contends that the Smiths violated a Roswell city ordinance, but she has failed to introduce a certified copy of the ordinance and thus has failed to prove this claim. *Sweeney v. Lowe*, 325 Ga. App. 883, 883 (755 SE2d 813) (2014).

*Judgment affirmed. Ellington, P. J., and Self, J., concur*.