**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 8, 2019**

# In the Court of Appeals of Georgia

A18A1901. SAULSBURY et al. v. WILSON.

MARKLE, Judge.

This interlocutory appeal arises from a dog fight between Alpha, a dog owned by Lilita Renee Wilson, and Baby, a dog owned by Maribel Saulsbury. Both Wilson and Saulsbury allege they were injured during the dog fight and seek compensation for their injuries.[1] The Saulsburys moved for summary judgment on Wilson's counterclaims, in part, on the ground that Wilson assumed the risk of harm by intervening to break up the dog fight with her bare hands. The trial court denied the motion, finding that material issues of fact exist, but issued a certificate of immediate

---

[1] Saulsbury's daughter, Stephanie Saulsbury, is also a party to this appeal, though it is unclear from the record on appeal what claim she asserts or the nature or extent of any injuries she sustained. Consequently, any reference to "Saulsbury" refers to Maribel Saulsbury, and "Saulsburys" refers to Stephanie and Maribel collectively.

review of this order. This Court granted the Saulsburys' application for interlocutory review and the Saulsburys timely appealed. Upon review of the record, we find that Wilson assumed the risk of harm as a matter of law, and we reverse the trial court's denial of the motion for summary judgment on Wilson's claim.

"In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment." (Citation omitted.) *La Cosecha, Inc. v. Hall*, 246 Ga. App. 441, 442 (540 SE2d 659) (2000).

So viewed, the record shows that Saulsbury was walking her English Bulldog, Baby, past Wilson's house on May 13, 2016. Wilson's Pit Bulldog, Alpha, was secured in a crate inside Wilson's open garage, but the dog somehow escaped. A fight ensued between the dogs, though the parties disagree about the particulars of the fight. Wilson intervened to try to break up the fight. At one point she was able to pull Alpha out of the fight, but she slipped and lost control of the dog. Wilson engaged with the dogs again in an attempt to pull Alpha away. Wilson was not afraid of her own dog during this fight, and she was not concerned about being bitten by Baby because she believed Baby was solely focused on Alpha. However, Wilson was aware

2

prior to this fight that Baby previously bit a different neighbor.[2] Wilson nonetheless did not think any bite would be severe because, in her experience, the bites sustained during dog fights were superficial. Also, she had broken up other dogfights before using a stick.

While attempting to break up this fight, Wilson was bitten, allegedly by Baby. Wilson left the dogs fighting outside to tend to her bite. Wilson returned outside and eventually the dogs stopped fighting, though the parties disagree about what caused the fight to end. Wilson suffered a broken arm as a result of the dog bite, and she was required to undergo rabies shots when Baby's vaccination history was not timely available.

The Saulsburys sued Wilson in magistrate court to recover hospital and veterinary expenses. Wilson answered, counterclaimed, and successfully transferred the case to superior court because her claims exceed $15,000. The Saulsburys moved for summary judgment on Wilson's claims, and the trial court denied the motion. This appeal followed.

---

[2] There is evidence in the record that Baby also bit a veterinary technician, but there is no evidence Wilson was aware of this incident.

1. The Saulsburys argue they were entitled to summary judgment because Wilson assumed the risk of harm as a matter of law when she intervened in a dog fight with her bare hands. We agree.

Wilson brings her cause of action pursuant to OCGA § 51-2-7[3] which provides, in relevant part,

> [a] person who owns or keeps a vicious or dangerous animal of any kind and who, by careless management or by allowing the animal to go at liberty, causes injury to another person who does not provoke the injury by his own act may be liable in damages to the person so injured. In proving vicious propensity, it shall be sufficient to show that the animal was required to be at heel or on a leash by an ordinance of a city, county, or consolidated government, and the said animal was at the time of the occurrence not at heel or on a leash.

Regardless of whether Saulsbury's dog, Baby, would be considered a "vicious or dangerous animal" pursuant to this statute, Wilson cannot recover if she assumed the risk of harm by using her bare hands to break up a dog fight.

---

[3] Wilson's cause of action cannot be based on Georgia's premises liability statute, OCGA § 51-3-1, because, although the parties dispute where the fight took place, there is no allegation that it took place on property owned or occupied by the Saulsburys. To the extent Wilson invites this Court to create a new theory of negligence specific to dog owners, we decline to do so.

4

> Assumption of risk in its simplest and primary sense means that the plaintiff has given [her] express consent to relieve the defendant of an obligation of conduct toward [her] and to take [her] chance of injury from a known risk. The result is that the defendant is simply under no legal duty to protect the plaintiff.

(Citation and punctuation omitted.) *Lundy v. Stuhr*, 185 Ga. App. 72, 75 (363 SE2d 343) (1987).

> The defense of assumption of the risk of danger applies when the plaintiff, with a full appreciation of the danger involved and without restriction of her freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed herself to those risks. The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury.

(Citation omitted.) *Gilreath v. Smith*, 340 Ga. App. 265, 268 (1) (797 SE2d 177) (2017). "Assumption of risk is a complete defense to negligence." (Citation omitted.) *Christian v. Eagles Landing Christian Academy, Inc.*, 303 Ga. App. 113, 115-116 (2) (692 SE2d 745) (2010).

5

Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication, either for or against the complainant, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment.

(Citations and punctuation omitted.) *Fagan v. Atnalta, Inc.*, 189 Ga. App. 460 (376 SE2d 204) (1988); see also *Durham v. Mason*, 256 Ga. App. 467, 468 (2) (568 SE2d 530) (2002) (assumption of the risk defense bars recovery when the evidence shows that the plaintiff, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.") (punctuation omitted).

This Court has recognized the risk that animals, even domesticated animals, can pose to humans. See *Lundy*, 185 Ga. App. at 73-74 ("It is in the common knowledge of the members of society that even domestic animals, when startled, are prone to defend themselves by biting. It is an unwise person who approaches an unknown dog and makes gestures toward that dog without first ascertaining the propensities of the dog."); see also *Griffiths v. Schafer*, 223 Ga. App. 560, 563 (478 SE2d 625) (1996) ("practically any dog will bite in certain circumstances and that

6

particularly violent and aggressive breeds are more likely to bite and even to inflict severe wounds."). Although we have not applied assumption of the risk to dog fight injuries, in other contexts we have held that "an adult of ordinary intelligence will be held to be aware of manifest risk or danger of possible injury when [she] deliberately and voluntarily joins in an affray, as a matter of law." (Citations and punctuation omitted.) *Cornelius v. Morris Brown College*, 299 Ga. App. 83, 86 (3) (681 SE2d 730) (2009). This Court has previously held that "it is well settled that an adult of ordinary intelligence assumes the risk of possible injury when [she] deliberately and voluntarily joins in a fight, or enters into a fight for the purpose of breaking it up." *Carter v. Scott*, 320 Ga. App. 404, 408 (2) (750 SE2d 679) (2013); see also *Fagan*, 189 Ga. App. at 461. While all of these cases involved fights with human participants, we see no reason for a different rule when a person intervenes in a fight between dogs with the purpose of breaking it up.

Here, Wilson assumed the risk of injury by intervening in the dogfight with her bare hands, and therefore summary judgment in favor of the Saulsburys is appropriate on this issue. Wilson had knowledge that Baby had previously bitten one or more persons. She had years of experience with dogs and had broken up other dogfights before using a stick, showing she had an appreciation of the risks in intervening in a

7

dogfight. Wilson engaged in obviously dangerous conduct by intervening in a dog fight with her bare hands, and thus even her allegation that she did not appreciate the danger of the situation will not save her claim. See, e.g., *Lundy*, 185 Ga. App. at 74 ("The plaintiff went into the situation with [her] eyes wide open. [She] saw the whole picture; [s]he had the opportunity to measure the risks, if any, and was under no compulsion [to intervene]. . . . At some point the danger and likelihood of injury becomes so obvious that actual knowledge by the plaintiff is unnecessary."). Accordingly, summary judgment is appropriate in favor of the Saulsburys on the issue of assumption of the risk.

Wilson's argument that Saulsbury may have been in violation of various DeKalb County ordinances in her handling of Baby also is of no avail. Wilson's assumption of the risk precludes her claim even if Saulsbury were negligent. *Christian*, 303 Ga. App. at 115-116 (2).

Moreover, to the extent Wilson argues that DeKalb County animal ordinances required her to place herself in danger by intervening in a dog fight with her bare hands, we disagree.

As the Supreme Court of Georgia has held, the principles that guide our consideration of the meaning of statutes are settled ones, and we apply those same principles when we consider the meaning of an ordinance. Thus, we look first to the text of the ordinance, and if the text is clear and unambiguous, we look no further, attributing to the ordinance its plain meaning. In doing so, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears. Additionally, we read the ordinance as a whole according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending its operation. And importantly, as we consider the meaning of an ordinance, we remember that it is not to be construed in a vacuum, but in relation to other ordinances of which it is a part, and all ordinances relating to the same subject matter are to be construed together, and harmonized wherever possible.

(Citations, punctuation, and footnotes omitted.) *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49, 56 (3) (806 SE2d 215) (2017).

Wilson points to several DeKalb County ordinances to support her position. DeKalb County Code of Ordinances § 5-2 - General responsibilities of owners - provides, in relevant part,

(a) It shall be the duty of every owner of an animal to take all necessary steps and precautions to protect other people, property, and other animals from injury or damage resulting from such animal's behavior,

9

including, but not limited to, chasing, biting, or otherwise jeopardizing the safety or welfare of the public, regardless of whether such behavior is motivated by mischievousness, playfulness, or ferocity.

Code § 5-3 - Keeping animal under restraint while on owner's property - provides, in relevant part:

(a) It shall be the duty of every owner of an animal to ensure that the animal is kept under restraint, and that precautions are taken to prevent the animal from leaving, while unattended, the real property limits of its owner.

(b) It shall be the duty of every owner of an animal to ensure that the animal is securely and humanely enclosed within a proper enclosure as a means of primary restraint. Such enclosure must be securely locked at any time the animal is left unattended. When outside the proper enclosure but on the owner's property, it shall be the duty of every owner of an animal to ensure that the animal is humanely secured by a leash or lead and under the control of a responsible and competent person; or off leash but under the direct control of a responsible and competent person who is physically present with the animal, provided that such animal is obedient to that person's command.

Finally, Code § 5-4 - Duty to restrain while off owner's property - provides: "It shall be the duty of any person to keep an animal under restraint and control at all

10

times while the animal is off the real property limits of the owner. Such areas shall not include county parks that are specifically designated as off leash areas."

Reading the plain language of these ordinances demonstrates that they created no obligation on the part of Wilson to dangerously insert herself into a dog fight. Even assuming they created an obligation for Wilson to take steps and precautions to prevent a dog fight from occurring by properly restraining and handling her own dog, the ordinances cannot be reasonably interpreted to obligate dog owners to jeopardize life and limb if a dog fight happens.

Therefore, we conclude that Wilson assumed the risk of harm as a matter of law by intervening in a dog fight and, thus, the trial court erred in denying the Saulsburys' motion for summary judgment on her claims.[4]

2. In light of our holding in Division 1, we need not reach the Saulsburys' remaining enumeration of error.

*Judgment reversed and case remanded. McFadden, P.J., and Rickman, J., concur.*

---

[4] The Saulsburys' claims against Wilson remain pending.

11