**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 6, 2024**

# In the Court of Appeals of Georgia

A23A1449. SOUNDARA v. AMB SPORTS & ENTERTAINMENT, et al.

A23A1450. SOUNDARA v. KRAVER, et al.

A23A1451. SOUNDARA v. SAFE MANAGEMENT OF GEORGIA.

HODGES, Judge.

After Lynda Soundara was injured in a brawl during a college football game at Mercedes-Benz Stadium in September 2017, she sued AMB Sports & Entertainment ("AMB Sports") and the Atlanta Falcons Stadium Company ("StadCo") (collectively, "the Stadium Defendants"); the Stadium Defendants' security service, SAFE Management of Georgia ("SAFE"); as well as Charles Kraver Jr. ("Kraver Jr.") and his son, Charles Kraver III ("Kraver III") (collectively, "the Kravers"). In Case Nos. A23A1449 and 1451, she raised claims of negligence and vicarious liability

against the Stadium Defendants and SAFE, respectively; in Case No. A23A1450, she asserted claims of assault and battery against the Kravers. All defendants moved for summary judgment contending, among other things, that Soundara cannot recover because she assumed the risk of harm by voluntarily inserting herself into an ongoing altercation. The trial court granted all three motions in separate and brief orders. Soundara filed the three appeals presently before this Court, which are consolidated for our review. For the reasons that follow, we affirm in Case Nos. A23A1449 and A23A1451, and we reverse in Case No. A23A1450.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *Britton v. Farmer*, 283 Ga. App. 733, 733-734 (642 SE2d 415) (2007); see also *OnBrand Media v. Codex Consulting*, 301 Ga. App. 141, 144 (1) (687 SE2d 168) (2009) ("factual disputes regarding immaterial issues do not preclude summary judgment").

The record, which contains, inter alia, deposition evidence as well as video evidence from the stadium's security cameras, shows that Soundara and her companions were sitting in the Florida State University section of the area of the stadium, also called the "seating bowl." The Kravers are University of Alabama fans but had mistakenly bought tickets for seats in the Florida State section. The Kravers and Soundara were sitting near one another but had no interactions in the seating bowl. During the game, Soundara left to use the restroom and purchase concessions. While she was gone, the Kravers became involved in a fight in the seating bowl, punching and hitting several fans; there was evidence that Kraver III punched someone in Soundara's party — her fiancé's brother-in-law.

StadCo employees escorted the Kravers to the concourse area outside the seating bowl. The Kravers continued to exhibit "aggressive" behavior in the concourse, as observed by StadCo and SAFE employees, who did not alert a passing law enforcement officer. The Kravers eventually moved back toward the seating bowl, although the detailed evidence about the reasons for this, and the manner in which it happened, is inconsistent. A SAFE representative deposed that Kraver Jr. was allowed to go toward, but not into, the seating bowl, in order to identify other combatants. He

was accompanied by security personnel. A Stadium Defendants' representative, however, deposed that the Stadium Defendants tried to prevent the Kravers from going back to their seats and that he called for extra help via his radio.

While the Kravers were in the "tunnel" or "vomitorium" — the passageway which leads back to the seating bowl — talking with security, Soundara also entered the tunnel, on her way back to her seat after buying a pretzel. Her fiancé, Peter Hill, came out of the men's room and entered the tunnel.

Videos from the stadium's security cameras show what happened next from several angles. The video evidence shows Soundara waiting in the hallway outside the men's room, holding something in a light-colored wrapper or bag. Nearby, stadium and security employees are gathered with a group of men, which includes the Kravers. Soundara appears to be watching the interaction. The group walks off camera and Soundara follows, also moving off-screen. One woman is using her cellphone to film the off-screen interactions. The group of men then moves back onscreen, bumping into one another at first; in a matter of seconds, this devolves into tussling and fighting. Soundara walks back onscreen and walks right up to the fighters, gets knocked down onto her bottom, gets up, takes a step or two backwards toward the wall

and away from the fight, then pulls off her sandal and runs directly into the fight, striking people with the sandal in her hand. Kraver Jr. then grabs Soundara by her long hair and slams her to the ground before security workers move in to restrain him.[1] A stadium employee deposed that he saw Kraver Jr. with Hill in a "headlock," and that Soundara "came in and was just swinging . . . something in her hand . . . and then [Kraver Jr.] grabbed her and just flung her into the wall." The employee grabbed Hill to try to de-escalate the situation. He also called emergency medical services for Soundara, who was bleeding.

Soundara's fiancé, Hill, discussed the melee in his deposition. After leaving the restroom and entering the tunnel, Hill heard someone shout. He turned and saw Kraver III punching Kevin Breedlove, who is Hill's brother-in-law. Hill deposed that Kraver III had previously punched Breedlove in the seating bowl. Hill yelled and threw his hat to the ground, motioning Kraver III toward himself in an attempt to bring the altercation in his direction and to get Kraver III off of Breedlove, who appeared injured.

---

[1] Kraver Jr. deposed that he was six feet tall and weighed approximately 220 pounds; Soundara deposed that she was five feet tall and weighed about 120 pounds.

Breedlove deposed that as he, Hill, and others were in the tunnel, someone punched him in the eye. He looked up after being punched and saw Hill and Kraver III fighting. Breedlove saw Soundara "walk over to, or run over to try to break that fight up." Breedlove saw Kraver Jr. "pull her off and slam her to the ground." Breedlove deposed that he also saw Soundara "jump on the younger Kraver's back while he . . . had Peter Hill in a chokehold."

Kraver III, by contrast, deposed that he and Kraver Jr. were walking with security back to the seating bowl to identify the other combatants when Hill threw his hat to the ground and began yelling "let's F-ing go, or let's F-ing fight" and then they "just tangled up and fought." Lillie Kraver, the wife of Kraver Jr. and mother of Kraver III, deposed that Soundara broke her son's tooth and hit him over the head, and that Kraver Jr. "pushed" Soundara off of Kraver III in an attempt to protect his son.[2]

Soundara deposed that she saw herself in the video taking off her Tory Burch sandal. Although she did not recall running into the fight or hitting anyone with it,

---

[2] Kraver Jr. was charged with simple battery, but the trial court later dismissed the charge, finding him immune from prosecution on the basis that he was justified in defending his son. This dismissal is not part of the instant appeal.

when asked during her deposition, "[D]id you see on the video that you were running towards them and you started hitting somebody over the head with your sandals?" Soundara responded, "I see it in the video." She also deposed, "I remember looking at — Peter [Hill] was getting choked and attacked by two people. It was a reaction. I'm trying to help them." Asked if she was "drunk" at the game, Soundara replied, "Yes[,]" but deposed, "I didn't get myself into a fight. It was there."

*Case Nos. A23A1449 & A23A1451*

1. On appeal, Soundara contends that the trial court erred in granting summary judgment to the Stadium Defendants (Case No. A23A1449) and the stadium's security company, SAFE (Case No. A23A1451), against which she raised claims of negligence and vicarious liability. Her arguments on appeal regarding these appellees are similar, so we will address them together.

Soundara argues that because employees of the Stadium Defendants and of SAFE knew that fights could erupt during football games and also knew of the initial fight in the seating bowl, they had superior knowledge of the risk for later violence. She also argues that the Stadium Defendants and SAFE violated their own safety policies, failed to guard, warn, and protect her, and failed to quickly report the

7

incident to the Stadium Operation Center. She avers that the Stadium Defendants and SAFE were the proximate cause of her injuries because, inter alia, they neither prevented the Kravers from walking back toward the seating bowl nor ejected them from the stadium. Soundara further asserts that because the Stadium Defendants failed to show that she lacked care for her own safety and that no prudent person would have acted as she did, they have failed to show that she assumed the risk of injury. We disagree.

> Before any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon. Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff [herself] is negligent in such a way that [her] own negligence is the sole proximate cause. Although issues of negligence, lack of care in avoiding the negligence of others, lack of care for one's own safety, and assumption of the risk are ordinarily not susceptible to summary adjudication, where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue of assumption of risk may be determined on summary judgment.

(Citations and punctuation omitted.) *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695, 696 (1) (409 SE2d 89) (1991).

"The elements of assumption of risk are: (1) a hazard or danger which is inconsistent with the safety of the invitee, (2) the invitee must know and appreciate the danger, and (3) there must be an acquiescence or willingness on the part of the invitee[] to proceed in spite of the danger." *Fagan v. Atnalta*, 189 Ga. App. 460, 460-461 (376 SE2d 204) (1988). "First, the plaintiff must at all times use ordinary care for [her] own safety; and second, the plaintiff must use ordinary care to avoid the consequences of the defendant's negligence when it is apparent or when in the exercise of ordinary care it should become apparent." (Citation and punctuation omitted.) *Richey v. The Kroger Co.*, 355 Ga. App. 551, 552-553 (1) (845 SE2d 351) (2020).

> The business invitee on private premises assumes the risk of danger of which [she] knows about and fully comprehends, *or which is sufficiently obvious*. That which a plaintiff may not do without barring [her]self from recovery is to accept a risk so obvious that taking it amounts to failure to exercise ordinary care for [her] own safety, or recklessly to test an observed and clearly obvious peril[.] A person cannot undertake to do an obviously dangerous thing without [her]self being guilty of such lack of due care for [her] own safety as to bar [her] from recovery if [she] is injured.

(Citations and punctuation omitted; emphasis supplied.) *Fagan*, 189 Ga. App. at 461.

9

Here, Soundara had "a clear choice of alternative actions[.]" Id. The video evidence shows her first walk right up to an ongoing fight, then get knocked down onto her bottom. She does not allege that she was injured in this initial incident. The video then shows her get up, move away from the fight and toward a wall, then remove her sandal and run directly into the still-ongoing affray.[3] Soundara had the clear choice of not initially approaching the fight. After she initially approached the fight, fell to the floor and retreated, Soundara had the additional clear choice of remaining in a position of relative safety against the wall and of not re-entering a fight in which she had already been knocked to the ground. *Fagan*, 189 Ga. App. at 461 (finding "appellant had a clear choice of alternative actions" but "deliberately entered into a volatile confrontation" even though "[h]e saw the entire situation in front of him"); see generally *Richey*, 355 Ga. App. at 554 (1) (noting that "a person who is injured by

---

[3] Although Soundara argues that the Stadium Defendants' and SAFE's factual explications and arguments on appeal differ from one another, and that this means there is a material factual dispute, we note that, of course, the differing arguments in appellate briefs are not evidence. *DirecTV v. White*, 355 Ga. App. 404, 407 (1), n. 3 (844 SE2d 289) (2020). See generally *Smith v. Wal-Mart Stores East, LP*, 330 Ga. App. 340, 348 (2) (b) (ii) (765 SE2d 518) (2014), quoting *Scott v. Harris*, 550 U. S. 372, 380 (III) (A) (127 SCt 1769, 167 LEd2d 686) (2007) (when "opposing parties tell two different stories, one of which is blatantly contradicted by a videotape of the incident, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment") (punctuation omitted).

voluntarily assuming a position of 'imminent' danger when there is an accessible place of safety cannot recover against a negligent party") (citation omitted).

Further, the fact that Soundara initially approached a fight, was knocked down, and needed to retreat would, of course, alert her to the danger of entering the continuing physical altercation, as would the fact that she observed her fiancé being choked by two people and deposed that her intention was to help him escape that danger. "One who recklessly tests an observed and clearly-obvious peril is guilty of a lack of ordinary care." (Citation and punctuation omitted.) *Richey*, 355 Ga. App. at 553 (1).

> In the absence of anything to the contrary, every adult is presumed to possess such ordinary intelligence, judgment, and discretion as will enable [her] to appreciate obvious danger. Hence, an adult of ordinary intelligence will be held to be aware of manifest risk or danger of possible injury when [she] deliberately and voluntarily joins in an affray, as a matter of law.

(Citation and punctuation omitted.) *Fagan*, 189 Ga. App. at 461. There is nothing in the record, nor does Soundara claim, that she is not an adult of ordinary intelligence.[4]

---

[4] As noted above, Soundara deposed that she was "drunk." Our Supreme Court has determined, in the context of a negligence case involving an assumption of the risk defense, that "a voluntarily intoxicated person's acts will be evaluated by the same

Here, the danger inherent in an ongoing fight, which Soundara had ample opportunity to observe, was "sufficiently obvious." (Citation and punctuation omitted.) Id.[5]

In the instant case, Soundara deposed both that she was "trying to help" her fiancé, who "was getting choked and attacked" and, somewhat contrarily, that she "didn't get [herself] into a fight. It was there." First, as noted above, "it is well settled that an adult of ordinary intelligence assumes the risk of possible injury when [she] deliberately and voluntarily joins in a fight, or enters into a fight for the purpose of breaking it up." *Carter v. Scott*, 320 Ga. App. 404, 408 (2) (750 SE2d 679) (2013) (reversing denial of summary judgment and finding that security guard, injured when he intervened in a fight between an Alzheimer patient and a nurse, had assumed the risk of injury); see generally *Cornelius v. Morris Brown College*, 299 Ga. App. 83, 86 (3) (681 SE2d 730) (2009) (physical precedent only) ("only one conclusion is permissible here: that [the injured person] deliberately interjected himself into the affray and

standard as a sober person's acts." *Muldovan v. McEachern*, 271 Ga. 805, 807 (1) (523 SE2d 566) (1999).

[5] Further, nothing in the record establishes that the Stadium Defendants "should have reasonably foreseen or anticipated that [Soundara] would suddenly decide to confront a potentially dangerous character." *Rappenecker v. L.S.E.*, 236 Ga. App. 86, 88 (2) (510 SE2d 871) (1999).

assumed the risk of injury by voluntarily confronting those who had begun it")
(citation and punctuation omitted). Second, in *Rappenecker v. L.S.E.*, 236 Ga. App. 86
(510 SE2d 871) (1999), this Court determined that a plaintiff assumed the risk of harm
in an analogous situation, where the plaintiff averred both that he "did not intend to
fight and did not realize the danger prior to the beating[,]" id. at 87 (1) and also
averred that he did do something that put him in a "precarious situation" when he
"got out of the car" to confront a man who spit on him. Id. at 87, 88 (1). Here, as
Soundara acknowledged after viewing the video, it is clear that she

> intervened in the fight. Thus, the evidence clearly and palpably shows
> that [Soundara] was injured when [she] attempted to break up the fight
> between [the Kravers] and [her fiancé], and only one conclusion is
> permissible here: that [Soundara] deliberately interjected [herself] into
> the fight and assumed the risk of injury by voluntarily confronting those
> who [were involved in] it.

(Citation and punctuation omitted.) *Carter*, 320 Ga. App. at 408 (2).

Soundara points to this Court's opinion in *Richey*, however, to argue that she
did not assume the risk. *Richey* is clearly distinguishable. In that case, Richey noticed
that a man was inside his truck without permission. Richey knocked on or slapped the
driver's side window and the intruder shot and killed him. 355 Ga. App. at 551. In

*Richey*, this Court indeed determined that it could not find, as a matter of law, "that no prudent person would have acted as Richey did under the circumstances . . . such that he lacked ordinary care for his own safety." (Citation, punctuation, and emphasis omitted.) Id. at 553 (1). Pertinently, however, this Court found no evidence that Richey saw that the intruder was armed; this Court further specifically determined that "Richey *did not inject himself into an ongoing fight or situation which was violent, combative, or assaultive*, such that he had a clear and palpable knowledge of the risk of being physically harmed." (Emphasis omitted and supplied.) Id. at 553-554 (1). Here, Soundara deposed that she entered the ongoing affray to help her companions, one of whom was being choked. "Since any breach of duty by the [Stadium Defendants] was not the 'proximate cause' of [Soundara's] injuries, the trial court properly granted the [Stadium Defendants'] motion for summary judgment." *Howell v. Three Rivers Security, Inc.*, 216 Ga. App. 890, 892 (456 SE2d 278) (1995).

2. Based upon our determination in Division 1, supra, we need not address Soundara's other arguments on appeal in Case Nos. A23A1449 and A23A1451.

14

The trial court's grants of summary judgment in Case Nos. A23A1449 and A23A1451 are affirmed.

*Case No. A23A1450*

3. We turn now to Soundara's appeal of the grant of summary judgment to the Kravers.

In the trial court, Soundara raised claims of civil assault and battery against the Kravers. The Kravers' motion for summary judgment argued, as to both Kraver Jr. and Kraver III, that by inserting herself into the fight, Soundara assumed the risk of injury. The Kravers' motion additionally argued, only as to Kraver III, that he deserved summary judgment as a matter of law because an absence of evidence supported Soundara's claims. Specifically, the motion pointed to an absence of evidence that Kraver III touched Soundara, arguing no evidence supported a battery claim; the motion also cited an absence of evidence that Soundara was placed in reasonable apprehension of a violent injury, contending that as a result, no evidence supported an assault claim. The trial court granted summary judgment in an order containing no findings of fact or conclusions of law; thus, we cannot know the bases of its decision.

15

On appeal, Soundara argues that the trial court erred in granting summary judgment to the Kravers. She contends as to both Kravers that no undisputed evidence shows she lacked ordinary care for her own safety or that no prudent person would have acted as she did. She also argues that no undisputed evidence shows she left a position of safety to enter the fight, thus assuming the risk of harm. Additionally, she asserts that the trial court erred in granting summary judgment to Kraver III, contending that even if he did not touch her, he acted in concert with his father, Kraver Jr., and is thus liable under a civil conspiracy theory. Finding error, we reverse the grant of summary judgment as to Kraver Jr. and Kraver III for the reasons discussed below.

(a) *Kraver Jr.*: As discussed above, on appeal, Kraver Jr.'s only argument was that he deserved summary judgment because Soundara assumed the risk of harm when she inserted herself into the fight; Soundara countered that she did not assume the risk of harm. Both arguments are misguided.

It is well-settled that assault and battery are intentional torts. *Holt v. Rickman*, 368 Ga. App. 55, 57 (889 SE2d 155) (2023). Our case law holds that assumption of the risk is not a defense to an intentional tort. See *Hendricks v. Southern Bell Tel. &*

*Telegraph Co.*, 193 Ga. App. 264, 266 (2) (387 SE2d 593) (1989), citing *Harvey Freeman & Sons v. Stanley*, 259 Ga. 233, 234 (3) (378 SE2d 857) (1989); accord *Gates v. Navy*, 274 Ga. App. 180, 183 (4) (617 SE2d 163) (2005) ("It is well-settled that the defenses of comparative negligence, negligence per se, *assumption of the risk* and contributory negligence are not valid defenses to intentional . . . torts[.]") (citation and punctuation omitted; emphasis supplied); see generally OCGA § 51-11-7 ("If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's *negligence*, he is not entitled to recover. *In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.*") (emphasis supplied).[6]

Because the only basis of the Kravers' motion for summary judgment as to Kraver Jr. was an assumption of the risk argument, and assumption of the risk is not a valid defense to the intentional torts of assault and battery, the trial court erred in entering summary judgment in Kraver Jr.'s favor, and its decision in this regard must be reversed.

---

[6] Soundara does not argue on appeal and points us to nothing in the record indicating that she raised claims of negligence against the Kravers. See generally *Saulsbury v. Wilson*, 348 Ga. App. 557, 560 (1) (823 SE2d 867) (2019) (noting that assumption of the risk is a complete defense to negligence).

(b) *Kraver III*: Soundara argues that the trial court erred in granting summary judgment because, as she alleged below, Kraver III acted "in concert" with Kraver Jr., the latter of whom grabbed Soundara by her hair and slammed her down. Soundara argues that by acting in concert with his father, Kraver III — even though Soundara points to no evidence that Kraver III touched her — caused or contributed to the injuries she suffered "at the direct hand" of Kraver Jr.

Again, as discussed in Division 3 (a), assumption of the risk is not a defense to the intentional torts of assault and battery, the only claims Soundara asserted against Kraver III. On appeal, Soundara cites to a civil conspiracy case, *Sweet City Landfill v. Lyon*, 352 Ga. App. 824, 833 (3) (835 SE2d 764) (2019). It is well settled, however, that "[t]he conspiracy [] itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." Id. Thus, any determination regarding whether Kraver III engaged in a civil conspiracy would be premature. For the reasons outlined in Division 3 (a), we also reverse the grant of summary judgment to Kraver III.

*Judgment affirmed in Case Nos. A23A1449 and A23A1451. Judgment reversed in Case No. A23A1450. Mercier, C. J., and Miller, P. J., concur.*